U. S. Grant Hotel Company, Appellee, v. Louis S. Kehias, Appellant.

Gen. No. 8,320.

 Opinion filed October 23, 1929.

L. G. Griffith and R. J. Monroe, for appellant.

Raymond G. Real, for appellee.

Mr. Justice Niehaus delivered the opinion of the court.

In order to provide a new and modern hotel in the City of Mattoon, the association of commerce of that city took steps to interest the business men and residents of that city, for the purpose of raising the necessary funds for the project. The plan finally adopted was to procure subscriptions to the capital stock of the hotel company to be incorporated thereafter when the subscriptions procured would be sufficient in amount to carry the enterprise into effect. The appellant, Louis S. Kehias, was one of the subscribers to the stock of the corporation to be formed and entered into a written contract for that purpose for four shares of stock. The contract recites that

"Whereas, the Association of Commerce of Mattoon, Illinois, through its Board of Directors and other Members, have taken steps to secure agreements for purchase of stock, for the purpose of creating a fund to provide a new and modern hotel in Mattoon, Illinois, said enterprise to be duly incorporated under the laws of the State of Illinois;

"Now, Therefore, in consideration of the premises aforesaid mentioned and in consideration of similar subscriptions made by others and of the mutual promises and agreements herein contained and the benefits

and advantages resulting to each of us, respectively, I hereby subscribe for 4 shares of 6 per cent preferred stock of said corporation of the par value of One Hundred Dollars ($100) per share, and in consideration therefor and for value received, I promise to pay to the order of Fred Grant, Treasurer of the Mattoon Hotel Building Fund, the principal sum of Four Hundred Dollars; said sum to be payable at Central Trust Bank, Mattoon, Illinois, at the time and in the amounts hereinafter set forth, to wit, Ten Per Cent (10 per cent) July 15, 1927; Twenty Per Cent (20 per cent) Jan. 1, 1928; Ten Per Cent (10 per cent) Sept. 1, 1927; Twenty Per Cent (20 per cent) Mar. 1, 1928; Twenty Per Cent (20 per cent) Nov. 1, 1927; Twenty Per Cent (20 per cent) May 1, 1928.

"I further hereby subscribe for one share of fully paid, nonassessable common stock of no par value for every two shares of preferred stock bought and paid for, and hereby promise and agree to pay for said common stock at the rate of Five Dollars ($5.00) per share, payment for same to be made in full on or before May 1, 1928.

"It is further mutually agreed as follows:

"(1) That the certificates of such shares of nontaxable preferred stock, fully paid and nonassessable, and also the certificates of such shares of common stock, shall be retained and held as collateral security for the payment of this note, or any installment thereof, until the note shall be fully paid, at which time said certificates are to be delivered to me.

"(2) In the event of my failure to make any of the payments aforesaid within thirty days from due date, then the whole amount remaining unpaid shall immediately become due and payable.

"(3) The proposed Hotel Corporation of Mattoon, Illinois, shall have the option of retiring, by lot, the preferred stock at One Hundred and Five Dollars per share.

"(4) It is understood that no payments shall be called for under this subscription until an amount sufficient to assure the erection of the hotel has been subscribed and the minimum amount necessary to validate this subscription shall be understood to be sixty per cent (60 per cent) of the total investment finally agreed upon."

The appellee is the Hotel Company, which was incorporated pursuant to the plan referred to and which was contemplated by appellant's subscription contract; and it was duly organized and incorporated when the subscriptions for its stock had reached the sum of $120,000. A hotel was thereafter erected in the City of Mattoon at a cost of $170,623.92.

The evidence shows that the appellant paid $40 on his stock subscription to the appellee company after it was organized, but after that refused to make any further payment; thereupon this suit was instituted in the city court of Mattoon to enforce the payment of the balance alleged to be due. There was a trial by the court, which resulted in a finding and judgment in favor of the appellee company for $370 against the appellant. This appeal is prosecuted from the judgment.

Several contentions are made for reversal of the judgment. It is argued, that inasmuch as the contract provides for payment of the stock subscription "to the order of Fred Grant, Treasurer of the Mattoon Hotel Building Fund," the suit should have been brought in the name of Fred Grant, and could not therefore be legally sustained against the appellant. It is clear from the evidence however, and the contract, that Fred Grant has no personal or pecuniary interest in the subscription, and that the subscription was in fact for the stock of the appellee company; and that Grant was merely the agent of the appellee company which was to be subsequently incorporated and come into legal existence. A corporation is the proper

party to sue for the subscription money due and unpaid, for the capital stock which was subscribed for; and the appellant himself recognized his legal obligation and the appellee company's right to exact payment for the stock by paying a part of the subscription due under his contract. It is well settled that subscriptions for the capital stock of corporations to be formed in the future are valid. *Richelieu Hotel Co. v. International Military Encampment Co.,* 140 Ill. 248; *Merchants Bldg. Imp. Co. v. Chicago Exchange Bldg. Co.,* 210 Ill. 26. And where the subscription contract is for stock of a corporation to be organized in the future for the purpose of fostering a public or quasi-public enterprise, it should be liberally construed. *Merchants Bldg. Imp. Co. v. Chicago Exchange Bldg. Co., supra.*

It is further contended that no previous demand for payment was made by the appellee company, and that such previous demand is necessary before a suit could properly be brought upon the contract. No previous demand for payment was necessary in this case to exact payment under the contract because the contract itself fixes the dates the instalments should become due and payable. And the appellant recognized the fact, that the instalments were due and payable to the appellee company, as well as his obligation to pay them by making a partial payment thereon. *Rockford Metal Specialty Co. v. Wester,* 234 Ill. App. 260. It is also contended that under clause four of the additional agreements which were made a part of the subscription contract, no payments from appellant could be called for unless a minimum of 60 per cent of the total investment contemplated had been subscribed; and that there should be included in the total investment referred to in said clause the sum of $36,344.19, which the appellee company concluded to expend after the erection of the hotel building, for equipment and

106

furnishings of the hotel in order to secure a leasing of the same after the hotel had been erected. It may be said in reference to the latter contention that the clear inference from the evidence is, that necessity of the purchase of hotel furnishings and equipment were not thought of or in contemplation at the time of the execution of the contract as a part of the hotel investment; and this was not expected to be paid for out of the amounts realized from the stock subscriptions; and it is also apparent from the language of the fourth clause of itself, which clearly indicates, that the term "total investment" refers only to "an amount sufficient to assure the erection of the hotel." Inasmuch as the evidence shows, that the minimum of 60 per cent of the stock subscription for the cost of the erection of the hotel was fully secured, we conclude that this point is not well taken.

We find no reversible error in the record, and the judgment is therefore affirmed.

*Judgment affirmed.*