SANDS, Respondent, vs. KAUKAUNA WATER POWER COM-
PANY, imp., Appellant.

*September 3 — September 23, 1902.*

*Mortgage: Demise by mortgagor: Release of "premises": Foreclosure
judgment: Lien for subsequent taxes.*

1. A mortgage in the form of a trust deed, covering lands with an
   appurtenant water power, reserved to the mortgagor power to
   lease all or any of the lots, together with the water power "and
   all other rights and privileges appurtenant" thereto, and pro-
   vided that upon the ·approval of· such a lease by the trustee
   "the same and *the premises,* water power and all other rights
   and privileges described therein shall be no longer subject to
   the lien of this mortgage, except that this mortgage, during the
   life thereof, shall be a lien upon the rents reserved," etc. *Held,*
   that the word "premises" was not used in its technical meaning,
   referring to the leasehold estates merely, but means the leased
   lots themselves — the *corpus* of the land.
2. A judgment of foreclosure which provides for a sale of the mort-
   gaged premises to raise money to reimburse the mortgagee for
   expenditures necessarily made by him between the date of the
   judgment and the day of sale to protect the property from tax
   liens, is erroneous; but since, by proper proceedings under
   secs. 1158–1160, Stats. 1898, the premises or the proceeds of the
   sale thereof could have been charged with a lien for such ex-
   penditures, it may be that such error would not by itself re-
   quire a reversal.

APPEAL from a judgment of the circuit court for Outa-
gamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

Action to foreclose a mortgage. The complaint is in the
usual form. The mortgage is in the form of a trust deed. It
was given to the plaintiff as trustee to secure the payment of
the principal of and interest on seventy-five $1,000 bonds,
sixty-three of which were issued and fifty-eight of which were
outstanding at the time of the commencement of the action.
The mortgage or trust deed, among others, covered lands hav-
ing appurtenant thereto an improved water power. It fur-

ther covered the rents to be derived from the property, and in that regard contained these provisions:

"It is hereby provided that until default shall be made in the payment of the interest upon the said bonds secured by these presents, or in the payment of said bonds at the maturity thereof, or in the performance of the covenants and agreements herein contained to be kept and performed by the said party of the first part, the said party of the first part, its agents, appointees and assigns, shall be entitled to have, hold, use, possess and enjoy the said premises hereby mortgaged with the appurtenances, and to receive the rents, issues, and profits thereof to its own use and benefit, except as hereinafter provided."

"It is further provided that the said party of the first part, its successors or assigns, may at any time during the life of this mortgage, lease all or any or either of the lots contained in said blocks numbered one and two in said plat of Ledyard, together with the water power in said canal, and all other rights and privileges appurtenant to said lots or any or either of them. That whenever said lease or leases shall be approved in writing by the said party of the second part or his successor or successors in said trust, then the same and the premises, water power and all other rights and privileges described therein shall no longer be subject to the lien of this mortgage except that this mortgage, during the life thereof, shall be a lien upon the rents reserved in said lease or leases and shall entitle said party of the second part, or his successor or successors in said trust, to collect and receive said rents and the said party of the second part shall apply the said rents, firstly, toward the payment of the interest due upon said bonds, secondly, toward the payment of any taxes due upon the property covered by this mortgage, and thirdly, shall hold one half of the balance after making the said payments, as a sinking fund for the payment of said bonds, and pay the other half of said balance to the party of the first part hereto; and it is further provided that the said party of the first part may at any time during the life of this mortgage, sell and convey any portion of the premises hereinbefore described and embraced in this mortgage, subject to the approval of the said party of the second part in writing, and when so approved the lots or parcels of land so sold shall be released from the effect of this

mortgage, provided that all sums realized from such sales shall be paid to said party of the second part and held by him as a sinking fund for the payment of said bonds."

Subsequent to the making of the instrument various portions of the premises with water power appurtenant thereto were leased by the mortgagor with the approval of the trustee, so as to make the release clause operative. The litigated issue joined by the complaint and answer involved the question of whether the release clause referred to the mortgage lien upon the land or merely the leasehold interest therein. The court decided the proposition in favor of the plaintiff and ordered judgment accordingly, which was accordingly rendered.

For the appellant there were briefs by *Fish, Cary, Upham & Black,* and oral argument by *A. L. Cary.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* and oral argument by *George Lines.* They contended, *inter alia,* that the judgment in this case, as to the repayment of sums paid by the mortgagee to protect the property from tax liens, was expressly sanctioned in *N. W. Mut. L. Ins. Co. v. Drown,* 51 Wis. 419, 424.

MARSHALL, J. This appeal turns on the meaning of the word "premises" as used in the release clause of the trust deed. The trial court held to the technical meaning thereof in deciding this case, that is, that it was used in the same sense as that attributed to such word when it occurs in the *habendum* clause of a deed, to the estate granted, not to the *corpus* of the particular parcel of realty referred to. That such is its technical meaning may be conceded. *Farquharson v. Eichelberger,* 15 Md. 63; *Miller v. Ewing,* 6 Cush. 34; *Holbrook v. Debo,* 99 Ill. 372; *Berry v. Billings,* 44 Me. 416. It is difficult, however, to discover that it was used in that sense in the clause in question. The word is commonly used in referring to distinct parcels of real estate. The law dictionaries give that as the common or popular meaning.

2 Rap. & L. Law Dict. 996. We often refer to "leased premises," "advertised premises," "premises trespassed upon," and use many other expressions in which the word plainly refers to the land and not to any particular estate therein. In Abbott's Law Dictionary it is said that such use "seems now to have the support of widespread and frequent usage."

So rules of law require that the technical meaning of the word should not be preferred to the common, everyday meaning, when it is used outside the *habendum* clause of a deed, otherwise than in a connection rendering the technical sense plainly appropriate. *Amos v. Fond du Lac,* 46 Wis. 695, 701, 1 N. W. 346; *Cummings v. Dearborn,* 56 Vt. 441; *Bandalow v. People,* 90 Ill. 218; *Winlock v. State,* 121 Ind. 531, 23 N. E. 514; *State v. French,* 120 Ind. 229, 22 N. E. 108, 735; *Hilton's Appeal,* 116 Pa. St. 351, 9 Atl. 342; *New Jersey Zinc Co. v. Boston Franklinite Co.* 15 N. J. Eq. 418, 462. All the law dictionaries recognize that at this day "premises" generally speaking, when reference is made to realty, in the popular sense, means land and appurtenances thereto. In the later works such meaning is given as one of the appropriate significations of the term in legal instruments. Manifestly, the meaning of the word in one connection may be radically different than in another. The premises of a deed are those parts preceding the *habendum* clause. "In consideration of the premises" conveys the idea of the agreements on the part of one party to a contract, followed by agreements on the part of the other. The *premises* described in the *premises* of a deed are the lands described in that part of the deed preceding the *habendum* clause. There we have plainly two distinct meanings in close connection with each other.

Now "premises," it seems, is plainly not used in the release clause of the trust deed as in the *habendum* clause of a deed or as referring to preceding agreements. The antecedent clause is, "all or any or either of the lots contained in said

blocks numbered one and two in said plat of Ledyard." ·It would seem that in such connection it would be twisting words out of their natural and ordinary meaning to hold that they do not refer to and include the *corpus* of the thing,—the land. Courts are not permitted to do·that unless it is necessary to reach the real intent of parties, found actually, though obscurely, expressed. In the exercise of their proper function they must, in determining the meaning of contractual words, keep within the boundaries of reason, not go beyond the rational scope of words, and must give proper weight to the legal presumption that common words, or words having a particular technical meaning and others as well, that are not so placed as to plainly call for such technical meaning, are presumed to be used in the common, ordinary, comprehensive sense thereof, and such presumption should prevail in the absence of some satisfactory indication of a contrary intent. 2 Parsons, Cont. (8th ed.) 501.

Applying the foregoing to the facts of this case, it is plain that "premises," where it occurs in the release clause of the trust deed, is not in such a connection as to point at once to its technical, but rather points to its common, ordinary meaning,—to the particular land, the *corpus* thereof referred to. Any other meaning than the latter is involved, at least, in obscurity, requiring the most careful analysis of the whole instrument to bring it into light with any show of reason, in view of settled legal principles.

True, as counsel for appellant contend, the intent of the parties to a contract, so far as expressed by their language, should always govern, and effect must be given, if possible, to every clause of the instrument in determining the meaning of each particular portion thereof, and all should be read in harmony with the dominant purpose of the parties so far as rules of language and of law will permit. But we are unable to clearly see, or see at all, so as to give effect thereto, the same dominant purpose in the instrument in question that

the learned counsel for respondent and the trial court seems to have discovered. To us it appears that what the parties desired to accomplish was the conveyance of the lands mentioned in the trust deed, with the appurtenances thereto, to the trustee, to secure the payment of the principal and interest of the bonds mentioned, subject to the right of the mortgagor to lease such of the lands as had water power appurtenant thereto upon such terms as in the judgment of the trustee would render the lien of the mortgage upon the rent reserved a fair equivalent for the lien upon the *corpus* of the property, and that the substitution of the former for the latter would be but an exchange of equivalents. That appears to be what the trust deed expresses about as plainly as English words can do it without the addition of language pointedly excluding any other meaning. Power is plainly reserved to the mortgagor to rent any of the lots with the water power appurtenant thereto, "and all other rights and privileges" so appurtenant, and upon the making of any such lease and its approval by the trustee "the same and the premises, water power and all other rights and privileges described therein shall no longer be subject to the lien of this mortgage except that this mortgage, during the life thereof, shall be a lien upon the rents reserved," etc. The word "same" unmistakably refers back to the word "lease;" the word "premises" to the words "all or any or either of the lots;" and the words "water power and all other rights and privileges" to the words "water power in said canal, and all other rights and privileges appurtenant to said lots or any or either of them," mentioned in the power to lease. The word "premises" is plainly not used in the same sense as in the *habendum* clause of a deed. It points to the lot or lots themselves, the *corpus* of the realty conveyed to the trustee in the premises of the trust deed. The entire mortgage lien, except that upon rents and profits, as to any particular lot, in case of full compliance with the condi-

tions of the release clause respecting the same, the parties intended should be discharged.

We have not failed to note and carefully consider all of the reasons advanced by respondent's counsel for a conclusion contrary to the one above expressed and embodied in the judgment complained of. It is sufficient to say that they do not appear to us sound. If it were true that the trial court's construction of the release clause would fully carry out the principal purpose of the mortgage, there would still be the insuperable difficulty of adopting it, that it violates what the parties seemingly intended to express. When one mortgages a lot, reserving power to lease it, coupled with a provision to the effect that in case of the exercise of the power the premises described in the lease shall thereupon be discharged of the mortgage lien and the rent reserved shall take the place of that upon said premises (and that language seems to be a fair paraphrase of the language of the trust clause under consideration), it seems that there is little room, if any, for argument as to what is intended.

Complaint is made because the judgment provided for a sale of the mortgaged premises to raise money to reimburse the mortgagee for such sums as he might advance to pay taxes on the property or redeem the same from tax sales between the date of the judgment and the day of sale, and that any such sums should constitute a part of the aggregate amount of money necessary to be paid to prevent the enforcement of the judgment by a sale, and be considered by the sheriff as a part of the mortgage indebtedness in determining whether the proceeds of a sale were sufficient to fully satisfy the mortgage claim. True, as counsel for respondent claim, on equitable principles and by statute as well a mortgagee who has paid taxes on the mortgaged property to protect his security is entitled to a special lien on such property for his expenditures in that regard. Secs. 1158–1160, Stats. 1898. But it by no means follows that such lien can be anticipated

and enforced in the manner contemplated by the judgment before us. A foreclosure action, though commonly called a suit in equity, is regulated wholly by statute, every provision of which is in mandatory language. Nothing is left to the ordinary discretionary power of the court. The terms thereof must be followed with reasonable strictness. *Spengler v. Hahn,* 95 Wis. 472, 70 N. W. 466. Secs. 3154, 3162, Stats. 1898, govern the subject and plainly do not contemplate any provision for a sale of the mortgaged property for the purpose of providing funds to reimburse the mortgagee for expenditures necessarily made by him between the date of the judgment and the day of sale to protect the property from tax liens. It follows that the assignment of error under consideration was well taken, though, since by proper proceedings the mortgaged premises or the proceeds of the sale thereof could have been charged with a lien for expenditures necessarily made by the mortgagee to protect his security from tax liens, it may not be that the error would by itself require a reversal.

The result of the foregoing is that the judgment appealed from must be reversed and the cause remanded with directions to render judgment in accordance with this opinion.

*By the Court.*—So ordered.