OLD SOUTH ASSOCIATION *vs.* EDMUND D. CODMAN & others, trustees.

Suffolk.     December 7, 1911. — February 29, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Easement,* Of light and air.     *Contract,* Construction.     *Words,* "Premises."

Under an indenture between a corporation owning an open grass plot of valuable land on a street in the heart of a large city and the owner of a high office building in process of construction, granting to such owner for a term of years "an easement of uninterrupted light and air" over the grass plot, reserving a stipulated rent and providing that if "the major part" of "the premises" over which the easement is granted is taken by the city there shall be a reasonable reduction in the rent, a taking by the city of the use of more than half of the surface of the grass plot as described in the indenture for the purpose of the passage of the public on foot and of the building of a small structure not exceeding ten feet in height may be held, in view of the subject matter of the contract and the circumstances attending its making, not to be a taking of a major part of the premises within the meaning of the provision.

A corporation, owning an open grass plot of land on a street in the congested portion of Boston, which adjoined land owned by trustees on which a large office building was in process of construction, made an indenture with the trustees by which the corporation granted to them for a term of years "an easement of uninterrupted light and air over the premises hereinafter described above the level of the grass plot . . . and the right to project over not exceeding five feet of said premises" with cornices and certain other things. A stipulated rent was reserved to be paid "without any reduction on account of any future taking of part of the above mentioned premises by the city of Boston or other public authority for any purpose, . . . but if the whole of

the premises over which the said easements are hereby extended, or the major part thereof, is taken by the city of Boston or other public authority, or if the substantial enjoyment of the easements hereby created be impaired either by any structure placed on any portion of said premises taken by the city or other public authority pursuant to and in connection with such taking or otherwise," the agreement might be terminated or there should be a reasonable reduction in the rent. When the indenture was made a statute had been passed authorizing the construction by the city of a subway under the street adjoining the ·described premises. Such a subway was built by the city, for which takings were made of the described premises, of which the highest level was ten feet above the surface of the earth and the lowest level was about forty feet below such surface. The taking above the surface was only of a small area, and over the rest of the area described in the taking the right taken was that of passage for the public on foot. The whole of the surface covered by the taking was about three quarters of that of the described premises. The exclusive use of all areas above the level of the takings was reserved to the corporation as owner. There was no substantial interference with the easement granted to the trustees. The trustees contended that a "major part" of "the premises" had been taken and that under the terms of the indenture they were entitled to a reasonable reduction in the rent to be paid. *Held*, that the words must be interpreted in view of the subject matter of the contract and the purpose of the parties, and that here a taking of a major part of the premises must mean either an absolute taking in fee of more than half of the premises as measured on the surface of the earth, or such a taking of less than a fee as would authorize constructions over the larger part of the surface area high enough to interfere with the easement, and that the taking of the use of more than half of the surface in the manner above described was not a taking of the major part of the premises within the meaning of the contract, so that the trustees were entitled to no reduction in the amount of rent to be paid.

BILL IN EQUITY, filed in the Superior Court on July 2, 1908, and a supplemental bill filed on May 3, 1911, to enforce an agreement to pay rent for an easement of light and air under the terms of an indenture described below. By an order made upon the supplemental bill Moses Williams, Jr., and Francis R. Bangs were made defendants as the trustees of the Old South Building Association and as such trustees the successors to all the property and rights previously held by the trustees of the Old South Building Trust.

In the Superior Court the case was heard by *Pierce*, J., on the bill, answer and replication, and the supplemental bill, the allegations of which the defendants admitted to be true. The judge filed a memorandum as follows: "After a view and a consideration of the testimony introduced at the hearing I find as a fact that the conditions upon which the defendants were granted the right to have a possible readjustment and diminution of

rent through arbitration have not become existent. I further rule as a matter of law upon the testimony that the plaintiff is entitled to the relief prayed for. A claim may be prepared accordingly.".

By order of the judge a final decree was entered, by which the defendants Moses Williams, Jr., and Francis R. Bangs as trustees of the Old South Building Association were ordered to pay to the plaintiff the sum of $22,558.73. The defendants appealed. The evidence was reported by a commissioner appointed under Equity Rule 35.

The indenture containing the agreement sought to be enforced was made on December 20, 1902, between the Old South Association in Boston, a corporation created by St. 1877, c. 222, as party of the first part, and the then trustees of the Old South Building Trust under an indenture of trust dated March 1, 1902, as party of the second part.

The paragraphs containing the material provisions were as follows: "That the said party of the first part doth hereby grant unto the said party of the second part an easement of uninterrupted light and air over the premises hereinafter described above the level of the grass plot on the northerly side of the tower of the Old South Meeting House and the right to project over not exceeding five feet of said premises and to maintain thereover cornices window-sills, blinds, shutters, window-sashes, awnings and like projections on and from the southerly wall of a building on Washington Street in said Boston now in the course of construction for the party of the second part.

"The premises above referred to and over which said easements are granted are situated in said Boston and bounded as follows: Westerly on Washington Street; northerly by land held by the party of the second part for a term of years under said Indenture of Trust ninety-seven and 3/10 (97.3) feet; easterly by the same and southerly by a line coincident with the northerly face of the northerly side wall of the Meeting House extended in a straight line to said Washington Street. The right to maintain eaves, cornices and other ordinary projections of said side wall and to use blinds, shutters and awnings thereon is reserved.

"The easements and rights above granted are to begin on the first day of April 1903 and are to continue until the first day of

May 1977 provided however that if during the period of this grant the said Meeting House shall be damaged or destroyed in any manner or by any cause whatever or shall be in whole or part taken by right of eminent domain, or under any exercise of 'police power' so-called, so that said Association shall determine that it is not expedient longer to continue the use of the same for the purposes prescribed by its charter and that it is expedient to make a use of the servient premises under its charter inconsistent with their remaining open as herein provided or to sell the same, this agreement may then be terminated by an appropriate notice in writing served by the party of the first part upon the party of the second part and fixing the day for such termination at a date not less than three months from the time of such service.

"And in consideration of said grant the party of the second part pursuant to the authority given it by the provisions of said Indenture of Trust hereby agrees to pay to the party of the first part and its successors or assigns the sum of Six thousand dollars yearly in quarterly payments, the first payment to be made on the first day of July 1903, and at the same rate for any part of a quarter unexpired at the legal termination of this lease, without any reduction on account of any future taking of part of the above mentioned premises by the City of Boston or other public authority for any purpose, or on account of any release or conveyance by the party of the first part of any part thereof for the widening of Washington Street, and it hereby assigns to the party of first part any claim and right of action which it may hereafter have against said city or other public authority for any such taking and any right and title to the land so released or conveyed and any claim to compensation therefor, but if the whole of the premises over which the said easements are hereby extended, or the major part thereof, is taken by the city of Boston or other public authority, or if the substantial enjoyment of the easements hereby created be impaired either by any structure placed on any portion of said premises taken by the city or other public authority pursuant to and in connection with such taking or otherwise, the party of the second part shall have the right at its option either to terminate this agreement upon assigning to the party of the first part any claim and right of action which it may have growing out of such taking, or upon executing such assignment to de-

mand and receive a reasonable reduction in the annual payment thereafter to be made hereunder, such reduction to be fixed by arbitration if the parties are unable to agree upon the same."

*A. D. Hill*, (*R. H. Wiswall* with him,) for the defendants.

*R. W. Hale*, (*F. W. Grinnell* with him,) for the plaintiff.

RUGG, C. J.   The plaintiff, being the owner in fee of certain open land next to the Old South Meeting House on Washington Street in Boston and the predecessors in trust of the defendants being the owners of an adjacent large office building then in process of construction and since completed, made an indenture by which the plaintiff granted to the trustees for a term of years "an easement of uninterrupted light and air over the premises hereinafter described above the level of the grass plot on the northerly side of the tower of the Old South Meeting House and the right to project over not exceeding five feet of said premises" with cornices and other things.   A stipulated rental was reserved to be paid "without any reduction on account of any future taking of part of the above mentioned premises by the city of Boston or other public authority for any purpose, . . . but if the whole of the premises over which the said easements are hereby extended, or the major part thereof, is taken by the city of Boston or other public authority, or if the substantial enjoyment of the easements hereby created be impaired either by any structure placed on any portion of said premises taken by the city or other public authority pursuant to and in connection with such taking or otherwise," then there should be a reasonable reduction in the rent. The premises were described by metes and bounds and distances as in ordinary conveyances.

Thereafter a taking was made by the transit commission for the city of Boston.   It was not in any aspect the taking of an entire fee of the premises.   Treating the earth and air above it as a solid, it was the taking of a series of prisms or prismatic sections which varied in vertical thickness between the extremes of fifty feet and twenty-four and one tenth feet.   Described with reference to the surface of the earth in the open space, over which the easement extended, the highest plane of any prism was ten feet above it and the lowest not over forty feet below it. The right to suitable support for the prisms and structures which might be placed within them, by soil or otherwise, was taken

below the lower planes of the prisms; otherwise, that below was left to the plaintiff. To the plaintiff as owner was definitely reserved the exclusive use of all areas above the upper planes of the prisms. Certain rights of support and of use for various purposes in common with the public use were preserved to the plaintiff.

The total area of land made subject to the easement of light and air in favor of the defendants' building was two thousand one hundred and fifty-six square feet. Of this, as a result of the taking, the city had exclusive surface rights in approximately four hundred and fifty-seven square feet and there remained to the plaintiff exclusive surface rights in four hundred and seventy-one square feet. Over the remaining surface of one thousand two hundred and twenty-eight square feet a right of way, as foot passages, was taken and the plaintiff retained the right of use in common with the public. It has not been argued that the form of taking is not in accordance with the statute or is unconstitutional. *Boston* v. *Talbot,* 206 Mass. 82.

It is not now contended that there has been any substantial interference with the enjoyment of the defendants' easement. The finding of the Superior Court is conclusive against such a contention. An examination of the evidences discloses no reason to disturb this finding. *Jennings* v. *Demmon,* 194 Mass. 108. The controversy is whether "the major part" of "the premises" over which the easement extends has been taken. "Premises" is a word which may have different meanings dependent upon its connection and the object to which it is applied. It oftentimes describes the fee of land. But it may signify something less extensive, if the context seems to require it.*

In order to determine the sense in which it was used in this indenture, it is important to bear in mind the subject about which the parties were contracting and their general purpose. The predecessors of the defendants as trustees were constructing a large office building with stores on the street floor in the congested part of Boston. The thing secured to them by the indenture

---

* *Hemming* v. *Willetts,* 7 C. B. 709, 715. *Winlock* v. *State,* 121 Ind. 531, 533. *Sands* v. *Kaukauna Water Power Co.* 115 Wis. 229, 233. *Mosley* v. *Vermont Mutual Fire Ins. Co.* 55 Vt. 142, 148. *Bowers* v. *Pomeroy,* 21 Ohio St. 184, 190. *Appeal of Hilton,* 116 Penn. St. 351. *Metropolitan Water Board* v. *Paine,* [1907] 1 K. B. 285.

was an easement of light and air over a tract of land on one side of their building. There was in contemplation of the parties the possibility that the ownership in fee of the plaintiff in the servient estate might·be lessened by some exercise of the power of eminent domain. The indenture is dated December 20, 1902, while St. 1902, c. 534, authorizing the Washington Street subway, was approved on June 27, 1902. The parties provided for the contingency of a taking under the authority of this statute. The first point settled by their contract was that there should be no reduction of rent simply if a part of the plaintiff's premises was taken, nor if any part should be conveyed or released for the widening of Washington Street and all claim for compensation by reason of any such taking, release or conveyance by the trustees against the public authorities was assigned to the plaintiff. This plainly indicates that the parties contemplated only a practical easement of light and air and that a theoretically legal, or other impairment of the easement, should work no change in their respective rights and obligations under the indenture, and that as to the public the plaintiff should represent the entire fee. The agreement then proceeds to deal with a fair adjustment between themselves of their respective rights and obligations in the event of disturbance of their contractual relations by an exercise of eminent domain. It is obvious that in touching this subject in this connection the parties contemplated a situation which would in fact make less valuable the easement, and thus equitably require a reduction of the rent reserved. They were not providing a means of revising their contract as to rent for any other reason. There is to be a reduction of rent if the substantial enjoyment of the easements is impaired by the erection of any structure or otherwise by the public authority. This protects the trustees in the event of any actual damage to them arising from the physical exercise of public rights. In that connection occurs the further stipulation (now under consideration) "if the whole of the premises over which the said easements are hereby extended, or the major part thereof, is taken." There was some claim in the trial below that this meant major part in value. But that proposition is not urged now. It is argued, however, that as the public has rights in the larger portion of the surface area of the premises, a major part of them has been taken. But the taking

of rights in the whole of the superficial area for pedestrian travel alone cannot reasonably be held in this connection to be a taking of the major part of the premises. The taking provided against is one which would give to the public authorities a right at any time to do, upon the whole or a major part of the premises, acts which might interfere with the easement. The natural meaning of the words is an absolute taking in fee of more than' half the premises as measured on the surface of the earth. But perhaps the words go further here and may include a taking even though less than of a fee which would authorize constructions over a larger part of the surface area extending high enough to interfere with the easement. But where the right taken in no case extends more than ten feet above the surface of the earth, and this only for a small area, and over the rest of the area a right of travel for people on foot is taken, it cannot be said, having reference to the circumstances attendant upon the making of the contract, that a major part of the whole premises is taken. Under other conditions and where a different thing was the subject of the contract a different result might be reached. But where parties are contracting about an easement of light and air over valuable land in the heart of a great city; which may be used profitably many feet above and below the surface of the earth, the surface area does not appear to be the measure by which to gauge the whole or major part of the premises. This construction gives a practical meaning to the agreement. Where the public acquire in the larger part of the premises rights, the exercise of which may interfere with the easement reserved, then the prospect of harm might be found to render the easement instantly less valuable, even though there was no immediate change in fact. The apprehension of the possible utilization of the right acquired might affect the character of tenants and the value of rentals. If the right was taken in less than the major part of the premises, then only an actual impairment in the substantial enjoyment of the easement would warrant a reduction of rent. Any other interpretation produces a result wide of any connection between a practical interference with the easement of light and air which was the subject about which the parties were making their agreement, and a demand for reduction in the annual rental.

There is not much weight in the argument that the instru-

ment of taking was in effect a taking of the entire premises and that the rights remaining in the plaintiff were granted to it as new rights. The ultimate result accomplished by the exercise of the single act of eminent domain is the substance of the matter.

*Decree affirmed with costs.*