E. H. STANTON CO. et al. v. ROCHESTER GERMAN UNDERWRITERS' AGENCY.

(District Court, E. D. Washington, N. D. August 1, 1913.)

No. 1,551.

1. CONTRACTS (§ 147*)—CONSTRUCTION—INTENTION OF PARTIES.
    In construing a contract, the intention of the parties as expressed in their language, taking the words in their ordinary and popular sense, must govern.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 730, 743; Dec. Dig. § 147.*]

2. CONTRACTS (§ 148*)—CONSTRUCTION—PRELIMINARY NEGOTIATIONS.
    In case of doubt as to the construction of a contract, preliminary negotiations may be taken into consideration.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 731; Dec. Dig. § 148.*]

3. CONTRACTS (§ 143*)—CONSTRUCTION—LANGUAGE OF INSTRUMENT.
    Where there is no doubt as to the meaning of a contract, there is no room for construction.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 723, 743; Dec. Dig. § 143.*]

**4.** INSURANCE (§ 173*)—CONSTRUCTION OF POLICY—AMOUNT OF INSURANCE—SPECIAL PROVISION.

A fire insurance policy covering a packing plant which grouped the various structures together under several items, and provided for the amount of insurance upon each item, and also provided that the loss should attach to each building under the several items in the proportion that each bore to the value of all, plainly provides that the entire amount of the insurance for each item should not apply to any one building, but only the proportion thereof that the value of that building bears to the value of all.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 358; Dec. Dig. § 173.*]

**5.** INSURANCE (§ 316*)—AVOIDANCE FOR BREACH OF WARRANTY—STATUTORY PROVISIONS.

Where a fire insurance policy contained a warranty that the insured would maintain 40 fire alarm boxes and a watchman service, under the A. D. T. watch and clock system, which required the watchman to report by signal to the central office every hour, and to promptly turn in a fire alarm, the failure of the watchman to report every hour, although he did promptly turn in the alarm, would not avoid the policy, under Insurance Code Wash. 1911 (Laws 1911, c. 49) § 34, providing that a breach of warranty which does not contribute to the loss shall not avoid a policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 744–747; Dec. Dig. § 316.*]

**6.** INSURANCE (§ 302*)—IMPLIED REPEAL—INCONSISTENT PROVISIONS.

Section 34 of the Insurance Code (Laws 1911, c. 49) was not repealed by section 106 of the same act, which adopted the New York standard form of policy to become effective January 1, 1912, since there is no reason why the Legislature should enact section 34 for a fraction of the year, and the sections are not inconsistent; it being within the power of the Legislature to prescribe the form of a contract, and also to give it a form and construction different from that which would be given it by the courts.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 302.*]

**7.** COURTS (§ 366*)—UNITED STATES COURTS—CONSTRUCTION OF STATE STATUTES.

The construction of the insurance code of a state should be left to the state tribunals.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*]

At Law. Action by the E. H. Stanton Company and another against the Rochester German Underwriters' Agency. On trial to the court without a jury. Judgment rendered for the plaintiffs.

Cannon, Ferris & Swan, of Spokane, Wash., for plaintiffs.
W. W. Hindman, of Spokane, Wash., for defendant.

RUDKIN, District Judge. This is an action on two contracts of insurance to recover damages for a fire loss. The policies are of standard form with riders attached, and describe the subjects of insurance, and set forth the amounts on each class of property insured as follows:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

§..........To apply proportionately upon each item (and its subdivisions) of the following schedule of amount and covering upon the property hereinafter described:

| Item No. | Designation. | Construction. | Location. | Subdivision A Amounts Insured on Building. | Subdivision B Amounts Insured on Machinery. | Subdivision C Amounts Insured on Stock. | Totals Insured (in and on) Buildings. |
|---|---|---|---|---|---|---|---|
| 1 | Cold Storage, Lard, Killing, Smoke, Boiler, Fertilizer & Engine Buildings, Dressing Rooms and Fuel Vault. | Brick Concrete and Frame | Blocks 29, 30, 31, 32, 33 and 48 of East Side Syndicate Addition and adjacent thereto. Spokane, Wash. | $75,000 | $27,000 | $30,000 | $132,000 |
| 2 | Offices | Brick | Ditto | 5,750 | 1,000 | Nil | 6,750 |
| 3 | Garage | " | " | 6,000 | Nil | Nil | 6,000 |
| 4 | Blacksmith Shop | " | " | 6,000 | 1,500 | Nil | 7,500 |
| 5 | Ice House | " | " | 5,000 | 5,000 | Nil | 10,000 |
| 6 | Hotel | " | " | 5,000 | 2,000 | Nil | 7,000 |
| 7 | Stable | " | " | 10,000 | 2,000 | Nil | 12,000 |
| 8 | Fertilizer Warehouse | frame | W½, Sec. 15, Twp. 25, N. R. 43, E. W. M. on North Side of N. P. right of way between Green and Ferrel Sts. Spokane, Wash. | 900 | Nil | 500 | 1,400 |
| 9 | Stable | frame | | 400 | Nil | Nil | 400 |
| 10 | Dwelling | frame | About 300 feet E. of Office, No. 212 Bernard Street. | 100 | Nil | Nil | 100 |
| 11 | City Plant | brick | Spokane, Wash. | 5,000 | 4,000 | 5,000 | 14,000 |
| 12 | Stable | brick | Rear of Lot 17, Block 8, Havermale's Addition on S. S. of Alley, North of and running parallel to Main Ave, between Bernard and Browne Sts. Spokane, Wash. | 1,000 | Nil | Nil | 1,000 |
| 13 | On sheds, loading docks, platforms and other structures, fences, gates, flooring, vehicles, machinery, apparatus, tools, implements and appliances as located on premises of assured outside the various buildings above described and not otherwise insured. | | | 1,200 | 650 | Nil | 1,850 |
| | | | | $121,350 | $43,150 | $35,500 | |
| | | | Grand Total............ | | | | $200,000 |

The first policy is in the sum of $20,000, and the second in the sum of $6,000. In all other respects the two policies are identical. The total loss was $33,060.57, distributed among the different classes of property insured as follows:

Damage to the killing building described in item No. 1............ $19,402.48
Damage to the machinery contained in the killing building and described in subdivision B..................................... 3,893.99
Damage to stock contained in the killing building and described in subdivision C............................................. 9,764.10

But while the total loss was $33,060.57, the plaintiffs only claim $3,239.75 under the first policy and $971.80 under the second policy, by reason of other concurrent insurance covering the same loss. The sole controversy in the case arises over the following provisions contained in the policies:

"$20,000 [$6,000 in second policy] to apply proportionately upon each item (and its subdivisions) of the following schedule of amount and covering upon the property hereinafter described. * * *

"It is understood and agreed that, in event of loss, this insurance shall attach to each of the buildings and contents thereof described herein in the exact proportion that the value of each building and contents thereof shall bear to the value of all such buildings and contents thereof at the time of fire. This clause applies to items 1 and 13. * * *

"It is a part of the consideration of this policy and the basis upon which the rate of premium is fixed that the insured shall maintain upon the within' insured premises 40 combination night watch and fire alarm boxes of the American District Telegraph Company, and the insured guarantees that, if said boxes of the American District Telegraph Company are removed at any time during the period in which this policy remains in force, they will immediately notify the representatives of the insuring company, and will pay back to said representative such proportion of the allowance now made as shall correspond to the time which this policy has then to run before terminating. * * *

"It is hereby warranted by the assured that one or more watchmen shall constantly be on duty in the premises herein described, night, Sundays and holidays, and at all times when the said premises are not in operation or open for business; watchman service being under A. D. T. watch or clock system."

A brief description of the insured premises and of the A. D. T. watch or clock system becomes necessary to a proper understanding and interpretation of the above provisions of the contracts of insurance. The main building of the packing plant is 201'x312', and includes all the subdivisions or departments under item No. 1.

The cold storage building consists of six stories and a basement, 114'x117', constructed of fireproof walls, 24 inches in thickness, rising 3 feet above the roof, and connects with the vestibule through heavy, fireproof refrigerator doors. This building is bounded on the north by the lard building with a 24-inch fireproof wall between.

The lard building consists of four stories and a basement, 48'x127'. The walls, except that adjoining the cold storage building, are fireproof, 20 inches in thickness, rising 3½' above the roof. This building also communicates with the vestibule through fireproof refrigerator steel doors.

The smokehouse building consists of four stories and a basement, 47'x49', constructed of 20-inch fireproof brick walls, rising above the

roof 3 feet, and communicates with the vestibule through steel fireproof doors.

The killing building consists of four stories and a basement, 66'x98', constructed of fireproof brick walls, 20 inches in thickness, rising 2 feet above the roof, and communicates with the vestibule through steel fireproof doors.

The fertilizer building consists of four stories and a basement, 66'x68', with a cattle pen on the roof. The floors are of reinforced concrete, and the walls are 20 inches in thickness, fireproof. It communicates with the killing building on the third and fourth floors only through 2-inch wooden doors.

The engine room is 1½ stories high, 50'x83'. The walls are fireproof, 16 inches in thickness, and it communicates with the vestibule through steel doors and wired glass windows.

The dressing rooms are located on the roof of the engine building, 17'x45' in dimensions, and inclosed by 4-inch concrete walls.

The boiler building is 1½ stories high, 47'x47' in dimensions, constructed of 16-inch fireproof brick walls, rising 1½ feet above the roof, and communicates with the fertilizer building by one unprotected opening.

The fuel vault is one story high, 17'x45' in dimensions, and constructed of concrete walls 8 inches in thickness. It communicates with the boiler building through an opening with sliding, fireproof doors.

The vestibule extends to the sixth story with re-enforced concrete floors and fireproof walls. It communicates with the cold storage building, the killing building, the smokehouse building, the engine building, and the dressing rooms through steel fireproof doors and fireproof refrigerator doors.

The offices, garage, and blacksmith shop, designated as items 2, 3, and 4, are in the same building.

The icehouse, hotel, stable, fertilizer warehouse, stable, dwelling, city plant, and stable, designated as items 5, 6, 7, 8, 9, 10, 11, and 12, are all separate buildings.

The several items which go to make up item No. 13 are scattered in different places about the plant and premises.

The A. D. T. boxes, 40 in number, are placed in the different rooms or departments of the building. "Watchman service being under A. D. T. watch or clock system" means that the watchman on duty shall ring in to the main or central office in the city of Spokane each hour for the purpose of registration. This, of course, serves as a check on the watchman, and is required for the purpose of ascertaining whether he is promptly attending to his duties. In case of fire an alarm is sent in in like manner, and is then transmitted to the city fire department.

It is admitted that a watchman was in fact on duty at the time of the fire, and that the fire alarm was sent in promptly; but it is likewise admitted that the requirement that the watchman should ring in each hour was never complied with.

Under the foregoing facts the plaintiffs contend that they are entitled to recover from the several insurance companies the full amount of their loss and proportionately from this company by reason of the

concurrent insurance, while the defendant contends that by reason of the average clause the insurance in any event only attached to the killing building, where the fire occurred, in the proportion that the value of the building bore to the value of all other items included in item No. 1 at the time of the fire, and that the like rule applies to the machinery and stock under subdivisions B and C. It further contends that by reason of the breach of the warranty to maintain the A. D. T. watch or clock system there can be no recovery in this action.

[1-4] 1. The courts have adopted certain rules for the construction of contracts, such as that the intention of the parties as expressed in their language must govern, that words are to be taken in their ordinary and popular sense, that the whole contract must be looked to, and that preliminary negotiations may be taken into consideration in cases of doubt. But it seems to me that one invariable and unvarying rule is controlling here, and that is, where there is no doubt, there is no room for construction. The contracts under consideration provide that the insurance shall apply proportionately upon each item and its subdivisions, and that in the event of fire it shall attach to each of the buildings and the contents thereof in the exact proportion that the value of each building and the contents thereof shall bear to all such buildings and the contents thereof, and to remove any possible room for doubt it is explicitly provided that the average clause shall apply to items 1 and 13. The plain meaning of all this is that the cold storage, the lard, the smoke building, and so forth, described in item No. 1, are each and all separate and distinct subjects of insurance, and that the amount of the policy was to be applied proportionately in the event of loss. It may seem a misnomer to call these separate parts or departments of one entire plant a building; but in entering into contracts parties have a right to adopt their own nomenclature, and if the language used is plain and free from ambiguity the courts have no alternative but to enforce the contract as they find it. The riders attached to the policies in suit were prepared with special reference to this plant, and, if the contracts do not mean what I have stated, they mean nothing at all, and the parties have used plain, simple language to no purpose. Further discussion could not make this more apparent. I am therefore of opinion that the insurance in question only attached to the killing building or department where the fire occurred in the exact proportion that its value bore to all the other buildings included under item No. 1 at the time of the fire, and that the same is true of the contents of the building, and under the stipulation of the parties the case will stand open for further testimony upon which to base the apportionment and fix the amount of the damages.

[5] 2. There is no merit in the claim that the failure of the packing company to maintain the A. D. T. watch or clock system defeats a recovery, for it is conceded that the failure of the watchman on duty to report to the central office hourly in no manner contributed to the loss, and section 34 of the Insurance Code of 1911 (Laws of 1911, pp. 161, 197) contains the provision that:

"The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss;

anything in the policy or contract of insurance to the contrary notwithstanding. In case a loss occurs while a breach of warranty exists, if it contributes to the loss, the insured shall only be entitled to recover the amount of insurance the premium paid would purchase at the rate that would be charged without the warranty. This section shall be liberally construed."

[6] The defendant contends, however, that this provision is in conflict with other sections of the act and particularly with section 106, adopting the New York standard form of policy as now or may be hereafter constituted, and that the operation of section 34 must be limited in point of time to the 1st day of January, 1912, when section 106 became operative, or, if its operation cannot be so restricted, that it was repealed by later conflicting provisions of the same act. I cannot agree with either of these contentions. No reason has been suggested why the Legislature should attempt to fill a temporary gap covering the brief period between 90 days after the adjournment of the 1911 session and the 1st day of January following, or why a warranty in an insurance policy should have greater effect after January 1, 1912, than before, and I discover none. The Legislature evidently intended that section 34 should form a part of the permanent Insurance Code of the state, and it is the duty of the courts to give full scope to the law as enacted. Nor is there any such conflict between section 34 and later sections as will work a repeal of the former. By one section the Legislature has prescribed a form of contract, and by another has declared the force and effect of that contract. This is not at all uncommon in legislation. Legislatures often prescribe the form of a deed or other instrument, and then give to it an effect which the courts could not give under the accepted canons of statutory construction. But the legislative will is supreme in that regard. Its powers are not restricted by the rules of grammar or the commonly accepted rules of construction; it may override both, and often does. In this case it has simply defined the force and effect of a breach of warranty in an insurance policy or contract, and it was entirely competent for that body to do so.

[7] Other questions have been discussed in the briefs; but they are not necessarily involved in this case, and the construction of the Insurance Code should be left to the tribunals of the state, where it primarily belongs.