## O'CONNOR et ux. v. GREAT LAKES PIPE LINE CO. et al.

### No. 9545.

Circuit Court of Appeals, Eighth Circuit.

Feb. 4, 1933.

Rehearing Denied March 20, 1933.

R. E. Culver, of St. Joseph, Mo., and D. H. Frost, of Plattsburg, Mo. (Benjamin Phillip and B. G. Voorhees, both of St. Joseph, Mo., on the brief), for appellants.

Charles M. Blackmar, of Kansas City, Mo. (Samuel D. Newkirk, Kenneth E. Midgley, and Meservey, Michaels, Blackmar, Newkirk & Eager, all of Kansas City, Mo., on the brief), for appellees.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

KENYON, Circuit Judge.

Appellants, designated here as plaintiffs, are owners of 480 acres of farm land in Clinton county, Mo., occupied by them for general farming purposes. Appellees were defendants in the trial court. The Great Lakes Pipe Line Company is a corporation transporting oil and oil products by pipe line

through the state of Missouri. Defendant Ambler holds a deed of trust from plaintiffs for the land to secure payment of plaintiffs' indebtedness to Northwestern Mutual Life Insurance Company. On October 10, 1930, the Pipe Line Company procured a right of way agreement from plaintiffs, by which said company was given the right to lay pipe lines across plaintiffs' land.

As the question we are to consider arises entirely out of a dispute as to the construction of this contract, we set forth the same in full:

"Right of Way Agreement.

"For and in consideration of the sum of One Dollar (1.00) to us in hand paid by Great Lakes Pipe Line Company, a corporation of Ponca City, Oklahoma, the receipt of which is hereby acknowledged, Dan S. O'Connor and Mary O'Connor, his wife, does hereby grant to Great Lakes Pipe Line Company, its successors or assigns, the right to lay, maintain, operate, re-lay and remove at any time a pipe line or pipe lines for the transportation of oil or oil products, gas and water, and if necessary, to erect, maintain, operate and remove telegraph and telephone lines, with right of ingress and egress to and from the same, on, over and through certain lands situate in the County of Clinton and State of Missouri, and described as follows:

"S E ¼ of Section 29 Township 56 Range 31 and East Half of 488 Rods Section 32 Township 56 Range 31.

"The said grantor, his heirs or assigns are to fully use and enjoy the said premises except the easement for the purposes hereinbefore granted to the said Great Lakes Pipe Line Company, its successors and assigns.

"The said Great Lakes Pipe Line Company for itself and its successors or assigns hereby covenants to bury the lines of pipes so that the same will not interfere with the cultivation of said premises.

"All damages to crops, surfaces, fences and premises for and because of the laying of each line of pipe and each telegraph and telephone line shall be paid for as soon as said line or lines are completed and shall include maintenance damages, if any. In addition to this there shall be paid on the laying of the first line of pipe an additional compensation at the rate of 50 cents per rod for each rod or fraction thereof of land on these premises across which said line is laid. Additional lines shall be laid for a consideration the same as for the first. If the amount of damages to fences, crops and premises which may be suffered by reason of laying, maintaining, operating, altering or removing said pipe lines or telegraph and telephone lines, cannot be mutually agreed upon, then same shall be ascertained and determined by three disinterested persons, residents of Clinton County, Missouri, one thereof to be appointed by the owner of the premises, one by Great Lakes Pipe Line Company, its successors or assigns, and the third by the two so appointed as aforesaid, the award of two of such persons being final and conclusive.

"It is understood and agreed that no fencing shall be had of the lands included within this agreement, without further agreement with the then owners of said lands, and that fencing connecting the lands with other lands—may be taken down, during construction of pipe lines or other construction, but at completion of construction, shall then be replaced or rebuilt in as good condition, as the fences were at the time of removal. Telephone and telegraph lines provided for herein, shall be installed so as to follow the boundary or property lines of the lands owned by the Subscriber hereto—unless otherwise agreed to, at time of construction or of renewal of lines.

"Dated this 10th day of October, 1930.

"Dan S. O'Connor,   [Seal]
"Mary O'Connor.   [Seal]."

This right of way agreement was duly acknowledged before a notary public and recorded in the recorder's office at Plattsburg, Mo.

In the spring of 1931 the Pipe Line Company laid a pipe line across plaintiffs' land. In so doing some damage occurred to the crops, the fences, and the surface of the ground. This action was brought to recover damages. The petition claims damage to the surface of the ground in the laying of the pipe line over a strip thirty feet in width in the sum of $500; damage to crops $230; damage to fences $250; and damage of $12,000 to the entire farm, which latter item is stated in the petition as follows: "That the damages done to said lands and the improvements thereon by reason of the conveyance of said easement to said defendant thereover; granting to said defendant and its assigns the right to lay, maintain and remove as many pipe lines over said lands as it saw fit, exclusive of the damage done to the growing crops, fences and the surface of said land as hereinbefore set out is $12,000.00, and that the market value of said lands has been decreased in said amount of $12,000.00 by reason of the granting of said easement thereover and the laying of said pipe line as herein alleged."

The trial court refused to submit to the jury the question of damages for the alleged depreciation of the entire farm by the grant of the easement. The other questions of damage to crops, fences, etc., were not seriously contested. The jury returned a verdict for plaintiffs of $646. Plaintiffs appealed, and argue here only the question of the refusal of the court to submit to the jury requested instructions, which raised the question of recovery for alleged depreciation of the entire farm. The issue is therefore clear.

The trial court in overruling the motion for a new trial filed an opinion, 2 F. Supp. 721, in which, after stating plaintiffs' claim, he stated his reasons for refusing to submit to the jury the question of depreciation, saying: "It seems clear to me that depreciation in market value was not within the contemplation of the parties as an element of damages under the written right-of-way agreement upon which plaintiffs sue. From the association of the word 'premises' with the words 'crops, surfaces and fences' which precede the word 'premises,' from the fact that the damages for which provision is made is that which results 'for and because of the *laying* of each line of pipe,' it seems to me that only physical damages such as might be suffered by crops, surfaces, fences and other things of a like nature, as buildings, growing trees, etc., were intended. Damages which resulted from the actual laying of a line of pipe were the only damages in contemplation. Certainly it was not intended by the parties that there should be included depreciation in the market value of the lands involved, a depreciation resulting, according to the plaintiffs' theory, not from the *laying* of a line of pipe, but from the possibility that the later *patrolling* of that line of pipe might result in the carrying of disease germs to cattle pasturing on the lands. Depreciation in market value on that account cannot be said to be a depreciation resulting from the laying of a line of pipe. If there is any such depreciation it results from an entirely different matter, to-wit, from what might be done after the laying of a pipe in connection with its maintenance."

The court also held that the issue of depreciation in market value was not within the allegations of the petition, and, further, that there was no competent evidence bearing on the subject of depreciation in market values, that none of the witnesses offered on that subject was qualified to testify.

While it is probable that the last-mentioned reason given by the court would be sufficient to sustain the judgment, we prefer to place our decision on the question of whether the court's interpretation of the contract was correct.

Counsel for plaintiffs argue, and cite cases, as to the rule of damages had there been a condemnation of the right of way of the Pipe Line Company. See Texas Empire Pipe Line Co. v. Stewart (Mo. App.) 35 S.W.(2d) 627. Of course, such cases are not in point, as the right here to damages is governed by a written contract. Plaintiffs' claim is based on this language of the contract: "All damages to crops, surfaces, fences, and premises for and because of the laying of each line of pipe and each telegraph and telephone line shall be paid for as soon as said line or lines are completed, and shall include maintenance damage, if any."

Counsel in their printed argument concede that, if the word "premises" were not used in this manner in the contract, the trial court's construction of the contract would be correct. They contend, however, that by the terms of the contract damages to the premises must be paid the same as damages to crops, fences, and the surface of the land; that damages to the premises means the depreciation of the entire farm, and that this is to be paid when the first pipe line is actually constructed; that they include maintenance damages, and that the word "premises" as used in the contract is the same as when used in warranty deeds and mortgages, and covers the entire farm. The argument is ingenious, and has considerable plausibility.

The words of the contract should, of course, be taken in their ordinary sense, E. H. Stanton Co. v. Rochester German U. Agency (D. C.) 206 F. 978; Corbett v. Winston Elkhorn Coal Co. (C. C. A. 6) 296 F. 577, and in construing the contract a court must, if possible, ascertain the mutual intention of the parties from the language of the contract and the facts and circumstances attending its making. It is not the province of a court to make new contracts for parties or to refuse to be governed by the intention of the parties as gathered from the contract. President Suspender Co. v. MacWilliam (C. C. A. 2) 238 F. 159; Adamson v. Alexander Milburn Co. (C. C. A. 2) 275 F. 148; S. B. McMaster, Inc., v. Chevrolet Motor Co. (D. C. S. C.) 3 F.(2d) 469. The case rests upon the meaning that should be given to the term "premises" as used in the contract. There can be no definition of the word "premises" applicable to every situation in which it may be used. It is a word of many meanings and usages. A glance at sections 1 and 5 of the title "Premises" in 49 C. J. pp. 1327 and 1329, will

give vision of its many uses. We quote from said section 1 with reference thereto: "A word having various meanings dependent upon the subject matter in connection with which it is used. It has no fixed legal significance." Also from some of the cases where the subject is discussed:

"The term 'premises' may or may not include land, but may be held to mean only the right, title, or interest conveyed; and its exact meaning, when found in contracts and conveyances, must be determined according to the intention of the parties as ascertained from the contract and the facts and circumstances attending its making." Merchants' Bldg. Imp. Co. v. Chicago Exch. Bldg. Co., 210 Ill. 26, 71 N. E. 22, 27, 102 Am. St. Rep. 145.

" 'Premises' is a word which may have different meanings dependent upon its connection and the object to which it is applied. It oftentimes describes the fee of land. But it may signify something less extensive, if the context seems to require it." Old South Ass'n v. Codman, 211 Mass. 211, 97 N. E. 766, 767.

"All the law dictionaries recognize that at this day 'premises' generally speaking, when reference is made to realty, in the popular sense, means land and appurtenances thereto. In the later works such meaning is given as one of the appropriate significations of the term in legal instruments. Manifestly, the meaning of the word in one connection may be radically different than in another." Sands v. Kaukauna Water Power Co., 115 Wis. 229, 91 N. W. 679, 680.

"While in common parlance the word 'premises' is used to signify land with its appurtenances, yet the usual and appropriate meaning of the word, when used in conveyances, is the thing demised or granted by the deed. Thus the term refers to the right, title, or interest conveyed, and not to the land itself. The word 'premises' as used in the patent from the state necessarily refers to the right of way granted, and not to the soil in the bed of the river." People v. State Board of Tax Com'rs, 67 Misc. 508, 124 N. Y. S. 711, 713.

"The word 'premises' means land and the buildings and structures thereon. Standard dictionaries so define it." McSherry v. Heimer, 132 Minn. 260, 263, 156 N. W. 130, 132.

See, also, 22 Am. & Eng. Ency. Law (2d Ed.) 1125.

It is apparent that the meaning to be given the term is dependent upon the circumstances in which it is used.

Applying this test to the contract here, can it fairly be said that it was the intention of the parties by the use of the term "premises" that recovery could be had for the difference in market value of the entire farm before and after the granting of the easement, or before and after the laying of any particular line of pipe?

The damage, if any, for which payment was to be made was provided by the contract. It was to crops, surfaces, fences, and premises, not by the granting of the easement, but by "the *laying* of *each* line of pipe." The contract provides for burying the line of pipe so as not to interfere with the cultivation of the whole farm. If the amount of damages to the fences, crops, and premises by reason of the laying of each line of pipe cannot be determined, etc., then a method is provided so to do. If any new line is laid, plaintiffs are to be paid for all the physical damage to crops, surfaces, fences, and premises. All damage done in making repairs is to be paid, maintenance damages when they occur are to be paid, and plaintiffs are to receive a compensation of 50 cents a rod for all pipes laid. We see nothing ambiguous about this. Depreciation in the market value of the land was evidently not in the mind of either party or different language would have been used. The agreement nowhere refers to this.

Whether plaintiffs suffer any disadvantage by reason of having made a contract for the laying of the pipe lines instead of compelling the Pipe Line Company to resort to condemnation is immaterial here. No fraud or overreaching is charged.

The trial court refers in its opinion to the association of the word "premises" with the words "crops, surfaces and fences" which precede the word "premises," and holds that the word "premises" refers to things of a like nature, such as buildings, growing trees, etc., and that these are what was intended, that the use of the general word "premises" preceded by the specific words conveys the inference that such use is intended to mean things of a like class or character. In other words, the well-known rule of ejusdem generis. The rule is stated in Swift & Co. v. Columbia Ry. Gas & Electric Co. (C. C. A. 4) 17 F.(2d) 46, 48, 51 A. L. R. 983, as follows: "And it is well settled that in such case the rule of construction known as Lord Tenderden's rule is applicable, that where particular words of description are followed by general terms, the latter will be regarded as referring to things of a like class with those particularly described—ejusdem generis." See, also, Pulom

v. Jacob Dold Packing Co. (C. C.) 182 F. 356; Brunson v. Carter Oil Co. (D. C.) 259 F. 656; Southern Surety Co. v. Town of Greeneville (C. C. A. 6) 261 F. 929; City of St. Louis v. Laughlin, 49 Mo. 559. Calling upon that principle to help in the construction of this contract, it is apparent that the term "premises" is used as a general term following the specific terms, crops, surfaces, fences, and that it should be limited to the things of a like nature, as the court aptly pointed out. It may fairly be said we think to refer to the land and its appurtenances necessarily used in the laying of the pipe lines or in repairing or maintaining the same.

Plaintiffs seek to recover damages claimed to be caused by the granting of the easement. It is true this was conveyed for a nominal consideration, but the damages to be paid plaintiffs were clearly contemplated by the contract to be those caused by the laying of each line of pipe, including maintenance damages, if any. We are satisfied that the trial court was right in the construction of this contract, and the judgment is affirmed.