## MORLEY, Appellant, v. HARRAH et al.

### Division One, February 19, 1902.

1. **Setting Aside Deed:** MISREPRESENTATIONS: VALUE OF NOTES. Representations that certain worthless notes, given as payment for real estate, were secured by a deed of trust on good land, tillable and renting for $250 a year, whereas in fact the holder knew the land to be worthless and the title notes also, justify an equity court in setting aside a deed to him.

2. ———: ———: ———: SUPPRESSION OF TRUTH. The willful and conscious suppression of the truth is as blameworthy as the willful and conscious expression of an untruth.

3. ———: ———: ———: TRANSFER OF TITLE TO ANOTHER. The immediate transfer of title to another, without consideration or even knowledge of that fact by the grantee, is itself evidence that the grantor had interpreted his action in obtaining a deed to the real estate by representing the consideration notes to be good, as fraudulent and untruthful.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED AND REMANDED *(with directions).*

*Thos. E. Turney* and *James E. Goodrich* for appellant.

(1) There is no question of an innocent purchaser. Holdsworth v. Shannon, 113 Mo. 525. (2) Inadequacy is not a question in the case. The plaintiff has received nothing for his equity in the Cameron property. The deeds read in evidence show beyond question that Clark had not a shadow of title to the land described in the deed of trust. Clark can not be found, is unknown to every one; and the notes are assigned without recourse both by the payee and by Jennie L. Harrah.

(3)   The plaintiff is not chargeable with negligence or want of diligence.   The land and the records were two hundred miles away and not accessible by railway.   The abstract shown to the plaintiff was accompanied with a statement by the defendant Harrah, that he had had it examined by a lawyer, naming him, and that the lawyer said the title was all right. He had the same right to rely upon this as upon either of the other representations.   Caldwell v. Henry, 76 Mo. 254; Langdon v. Green, 49 Mo. 363; Wannell v. Kem, 57 Mo. 478; Bailey v. Smock, 61 Mo. 213; Brownlee v. Hewett, 1 Mo. App. 360.   The plaintiff had known the defendant but one day, but an acquaintance of long standing had introduced him as a retired merchant, "honest and a nice man to trade with." That the acquaintance was to receive $25 from the retired merchant for this service (he performed no other) was unknown to the plaintiff.   Plaintiff says that he would not have traded with the defendant if he had not exhibited the notes, deed of trust and abstract, and if these had not seemed to be regular. The fact that the defendant had and exhibited these, coupled with the certificate of character given by Meservey, fully justified the plaintiff in relying upon the representations of the defendant.   Herman v. Hall, 140 Mo. 270; Richards v. See, 71 Mo. App. 274.   According to the plaintiff and Burr, the defendant's statements as to the title, the quality and the rental of the land were all without qualification; and while he told the plaintiff that he had never seen the land, this statement alone does not qualify the previous representations as to the quality, and certainly does not affect the representations as to the title and the price at which the land was being rented. Florida v. Morrison, 44 Mo. App. 529; Ring v. Paint and Glass Co., 44 Mo. App. 111.

*Joseph Barton* and *William Henry* for respondents.

VALLIANT, J.—This is a suit in equity to set aside a deed from plaintiff to defendant, J. C. Harrah, conveying cer-

tain real estate in the town of Cameron, on the ground that the deed was obtained by fraudulent misrepresentations. There was a finding and judgment for the defendants in the circuit court, and the plaintiff appeals.

The evidence shows that the plaintiff's property, consisting of a house and two lots in Cameron, was worth about $1,500; that having expressed a desire to sell, he was approached by a real estate agent named Meservey who introduced him to defendant Harrah as one likely to buy. Negotiations between Harrah and the plaintiff ended in plaintiff's deeding to Harrah the property for the consideration of $1,500, acknowledgment of payment was expressed in the deed, the conveyance being made subject to a mortgage on the property of $700, which Harrah assumed to pay as part of the consideration. The $1,500 was in fact not paid in cash but by the assumption of the $700 mortgage and the transfer to plaintiff of a note for $500 and three-fifths of another $500 note owned by Harrah's wife. These two $500 notes were a part of a $2,000 deed of trust incumbrance on 240 acres of land in Camden county. At the time the trade was made, one of the $500 notes was given to the plaintiff and one placed in the hands of a third person to be collected, $300 of the proceeds to be delivered to plaintiff and $200 to Harrah; the remaining $1,000 note was retained by Harrah. It turned out that the notes were entirely worthless and the plaintiff has received nothing for his property. The question of fact as to the representations made by defendant Harrah depends chiefly though not entirely on the testimony of the plaintiff. He testified that Harrah told him that the $2,000 note represented a loan of that amount made on the Camden county land, that it was under cultivation and was at that time rented for $250 a year; part of it was valley land and the rest valuable timber, that the title was perfect, that he had had it examined by a lawyer who pronounced it good. The fact developed that the land was of very little value, not under cultivation, scarcely

susceptible of it, and not rented at all; the grantor in the deed of trust and maker of the notes had no title and was himself unknown to any one who testified in the case.    The negotiations began on June 8, 1898, and the trade was closed the next day.    During the negotiations, on the ninth of June, Harrah showed the plaintiff the deed of trust and notes, and a paper containing a description of the land, also a paper which is spoken of in the testimony as an abstract of title. What the contents of the abstract were, or by whom made, does not appear as it was not produced at the trial.    At that time the plaintiff stated that he would take time to investigate the title, but Harrah told him that the trade would have to be made then or not at all, because he was going to Kansas City that evening.    Then they went to the office of another real estate agent, a Mr. Cornish whom plaintiff  requested to examine the papers, and he did so, and said the papers were regular, thereupon the trade was concluded.    One $500 note and the deed of trust were given to plaintiff, one note left with Cornish for collection, the defendant Harrah retaining the abstract and the remaining $1,000 note.    Two days afterwards Harrah conveyed the property by deed to defendant Kenner, but the conveyance, according to Kenner's testimony, was without consideration, and really without his knowledge or consent at the time it was made.    Harrah in his testimony denied that he made any representations as to the title or the land.    He testified that he told the plaintiff he knew nothing about either, that he had taken the notes in trade for a stock of goods, and believed them to be good, but that the plaintiff must take the risk himself.    He said he told him: "Now when I make a deal of this kind I try to make it all right and I will sign the papers over to you just as I got them; they were signed over to me without recourse and I will do the same. I wouldn't be responsible for anything.    I said:    'I have got $1,200 back, besides your $800, and if I can lose the $1,200 you can lose the $800 ?    I know nothing about it only by the

papers and if you trade you will have to trade this evening because I am going to Kansas City this evening.' " He admitted that he told plaintiff he had had a lawyer in Gallatin to go over the papers and that the lawyer said everything was all right and also that he gave the plaintiff a written description of the land which contained the representations plaintiff charges he had made. He said: "I told him nothing about the value of the land and its quality; that I didn't know anything about it aside from the description. I gave the description to Morley and I suppose he kept it; he started off with it. . . . . . I told him I knew nothing about the land renting for $250, but that the description said it was rented for some amount of that kind. I made no such statement to him. It was only from them papers he got it, that description." There was testimony showing that shortly before this trade Harrah had attempted to trade the same notes to a Mr. Burr, who lives in Cameron, for a farm, and in doing so told Burr that the notes were well secured, that it was good tillable land and rented for $250.

It was also shown by the deposition of Judge J. B. Malone that in the early part of 1898, Harrah was talking to him about his indebtedness growing out of his business in Chillicothe and his inability to pay, and witness suggested that he sell these notes for that purpose, but Harrah said the notes were worthless. Harrah was present when that deposition was being taken, and at the conclusion the plaintiff called him to the witness stand and he was sworn but refused to testify. At the trial he testified that this conversation with Judge Malone was two or three months after the trade in question.

Upon weighing the evidence in the case we can not doubt that the plaintiff's is the true version of the transaction. It is perfectly clear from the evidence that the defendant Harrah knew that the notes were worthless and he knew the plaintiff did not know it. He testified that his conversation with Judge Malone was two or three months after the trade and that he

had in the meantime discovered the truth. But his conduct in refusing to testify in the presence of the witness looks badly and justifies an adverse conclusion. He not only knew that the notes were worthless and that the man he was trading with did not know, but he also knew that by his conduct, if not by his words, he led his adversary in the trade to believe that the notes were valuable. He said he made no such representations but he admits that he gave the plaintiff what purported to be a written description of the land which contained the representations and the information on which he knew the plaintiff relied. There was no difference in the natural effect produced on the mind of the man he was dealing with, whether he used words or writings or symbols and there is no difference in law in the consequence. He knew that by those papers, in connection with what he said and did, he was inducing the plaintiff to believe that he was giving him well-secured notes and he knew that the plaintiff had had no opportunity to learn the contrary at the time the trade was closed. He testified that at the date of the trade he knew nothing about the character of the land or about the title of the grantor in the deed of trust. He testified also that he had been in business in Chillicothe and had sold out his stock of goods taking these notes in payment. The particulars of that transaction are not in evidence, but he leaves the inference that he took them at their face value and gave the equivalent without knowing anything about them. Whether he was misled in that transaction by false representations we are not informed, but when the trade in this case was made he had had plenty of time to learn the truth, and it is hardly believable that he continued to confide in misrepresentations if there were such and hold the notes, which, judging from the testimony of witness Malone, constituted no inconsiderable proportion of his assets, without making any inquiry about them.

The circumstances corroborate the testimony of the witness last named and justify the conclusion that Harrah did

know the truth when he made this trade and if he told the plaintiff, as he says he did, that he knew nothing about it, he made a misstatement and it was as effective in fact and as vicious in law as if he had made the statements that plaintiff says he made. The willful and conscious suppression of the truth under such circumstances is as blameworthy as the willful and conscious expression of an untruth.

The fact that immediately after this trade he attempted to pass the title to defendant Kenner, also looks badly. The purpose of that deed is very apparent and shows how the defendant Harrah himself interpreted his own conduct in obtaining the deed from the plaintiff.

The preponderance of the evidence on all the issues is with the plaintiff and he is entitled to the relief prayed.

The judgment is reversed and the cause remanded to the circuit court with directions to take an account to ascertain the amount of the rents of the property in the town of Cameron received by defendant J. C. Harrah less taxes and cost of insurance and repairs if any paid by him and enter a decree in conformity with the prayer of the plaintiff's petition cancelling the deed from plaintiff and wife to defendant J. C. Harrah described in the petition dated June 9, 1898, and the deed from Harrah to defendant Kenner mentioned in the petition dated June 11, 1898, and reinvesting the title to the property in those deeds described, in the plaintiff, and render judgment in his favor against defendant J. C. Harrah for the net amount of rents ascertained by the accounting as above indicated, and judgment against all the defendants for costs of suit. All concur.