MINNIE WARNER METTLER et al. Appellees, vs. VES-
PASIAN WARNER et al. Appellants.

*Opinion filed February 25, 1911—Rehearing denied April 5, 1911.*

1. JUDGMENTS AND DECREES—*when an order of county court approving sale by surviving partner does not bind heirs.* An order of the county court approving a sale by a surviving partner to herself of the partnership property is not binding upon the heirs of the deceased partner, who were not parties to the proceeding in the county court and had no knowledge of the order until long after the term at which it was entered.

2. TRUSTS—*equity has jurisdiction to set aside sale by trustee to himself.* A trustee has no right, under the law, to become a purchaser at his own sale, and if a resort to deceit is had to effect the sale then the sale becomes fraudulent in fact, and in either case a court of equity has jurisdiction to set it aside.

3. SAME—*what does not defeat right of beneficiary to have sale set aside.* The fact that a third person is used as a means to effect the transfer to the trustee of title to property which he has held in trust does not defeat the right of the *cestui que trust* to have the sale set aside.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

VESPASIAN WARNER, *pro se.*

HUGH CREA, and JOHN FULLER, for Vespasian Warner, executor, and other appellants.

UNDERWOOD & SMYSER, FRED BALL, INGHAM & INGHAM, and HERRICK & HERRICK, (ARTHUR W. UNDERWOOD, of counsel,) for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by Minnie Warner Mettler and Arabella Warner Bell in the circuit court of De-Witt county against Vespasian Warner, personally and as

executor of the last will and testament of John Warner, deceased, Eleanor M. Magill, personally and as surviving partner of the firm of John Warner & Co., and John Q. Lewis, for the purpose of setting aside a sale of the co-partnership property of John Warner & Co. (a banking firm composed of John Warner and Eleanor Magill) to said Eleanor M. Magill by Vespasian Warner, as executor of John Warner, deceased, and the order of the county court of DeWitt county approving said sale, and for other relief. Answers and replications were filed and the case was referred to a master to take the proofs and report his conclusions. The master took proofs and reported to the court that the circuit court of DeWitt county was without jurisdiction to hear and determine the case and that there was no equity in the bill, and recommended that the bill be dismissed. Objections were overruled to the master's report and they were renewed as exceptions in the circuit court, where it was held the circuit court had jurisdiction of the cause but that the bill was without equity, and the bill was dismissed. The complainants prosecuted an appeal to the Appellate Court for the Third District, where the decree of the circuit court was reversed and the case was remanded to the circuit court, with directions to that court to enter a decree "setting aside the pretended sale of the property and assets of the co-partnership business of John Warner & Co., and the interest of the estate of John Warner, deceased, in the property and assets of said co-partnership, by the defendant Eleanor M. Magill, as surviving partner, to herself, individually; also vacating the order of the county court of DeWitt county approving of said sale; and requiring the said Eleanor M. Magill, personally and as surviving partner of the firm of John Warner & Co., to render a just and true account of the conduct of said co-partnership business since the death of John Warner, and to pay to the executor of the last will and testament of John Warner, deceased, five-sixths of the profits realized in the con-

duct of said co-partnership business during said time, over and above the amounts properly and necessarily expended by her in conducting said business; and further directing said Eleanor M. Magill, as such surviving partner, to proceed with all reasonable diligence in the county court of DeWitt county to there settle the co-partnership business of John Warner & Co. in the manner provided by law." From this judgment the defendants in the original bill have prosecuted an appeal to this court.

It appears from the pleadings and proofs that on December 21, 1905, John Warner died testate at Clinton, in DeWitt county, leaving a large estate, and leaving him surviving his widow, Isabella Warner, and Vespasian Warner, Flora Warner McDermott, Arabella Warner Bell and Minnie Warner Mettler, his son and daughters and sole heirs-at-law. His will was admitted to probate and his widow declined to take under the will and elected to take under the law. By his will he gave to his son and daughters each a one-fourth interest in his estate and appointed his son, Vespasian Warner, executor and trustee under his will, who qualified and since the probate of the will has been acting as such executor and trustee. For many years prior to the death of John Warner he had been engaged in the banking business in Clinton under the name of John Warner & Co. In 1902 he formed a partnership with Eleanor M. Magill under the firm name of John Warner & Co., and said firm took over said banking business and was carrying on said banking business at the time of the death of John Warner. John Warner & Co. had a capital of $50,000, one-sixth of which was owned by Eleanor M. Magill and five-sixths by John Warner. On February 19, 1906, on the petition of Eleanor M. Magill to the county court of DeWitt county, John Q. Lewis, Fred H. Magill and Fred Cline, three employees in the John Warner & Co. bank, were appointed appraisers to appraise the property of John Warner & Co., and on February 21, 1906, said Eleanor M. Magill filed an

inventory in said county court showing the co-partnership property of John Warner & Co., consisting of cash, notes, etc., to be of the value of $789,059.48, and the liabilities of said co-partnership were fixed at $698,445.11, and wherein the value of the assets of the co-partnership over and above the liabilities was stated to be $90,614.37, to which should be added $3340.02 inventoried as doubtful and desperate claims. On the same day the appraisers filed their report, which was identical in amounts with the inventory filed by Eleanor M. Magill as surviving partner. The inventory and appraisement were approved by the court on May 31, 1906. On April 10, 1906, the sum of $6817.95, which was the net earnings of the bank from the date of the death of John Warner to that date, being a period of three months and twenty days, was added to the net value of the co-partnership assets as they were found to exist at the date of the death of John Warner, which amounts aggregated $97,432.32, of which amount five-sixths (or $81,193.60) was said to represent the interest of the estate of John Warner and $16,238.72 to represent the interest of Eleanor M. Magill in the co-partnership assets of John Warner & Co. On the same day Eleanor M. Magill drew two checks as the surviving partner of John Warner & Co., one in favor of herself for $16,238.72 and one in favor of Vespasian Warner, as executor of John Warner, deceased, for $81,193.60, and delivered the check for $81,193.60 to Vespasian Warner in payment of the interest of the John Warner estate in said co-partnership estate, and she claims to have then taken possession of said co-partnership estate as her individual property. On the following day but one,—that is, April 12, 1906,—Vespasian Warner, Eleanor M. Magill and John Q. Lewis, the former cashier of the John Warner & Co. bank, formed a new banking company under the name of John Warner & Co., with a paid up capital of $50,000, to which Vespasian Warner contributed nine-twelfths, Eleanor M. Magill two-twelfths and John Q. Lewis one-twelfth, and the

assets of the old bank were turned over to the new bank, and the banking business was continued by the new firm without change, and without any notice to the business world or to the customers of the bank or to the complainants that the business of the firm of John Warner & Co. had been sold to the new firm by the indirect course which had been pursued to accomplish this result. On May 12, 1906, Eleanor M. Magill filed a final report in the county court of DeWitt county, as surviving partner of the firm of John Warner & Co., in which she reported that she had purchased the interest of the John Warner estate in said co-partnership property for $81,193.60, which she had paid, and had agreed to assume all co-partnership liabilities, and to collect, if possible, said doubtful and desperate claims, amounting to $3340.02, and, when collected, to turn the five-sixths part thereof over to said Vespasian Warner as executor, which was in full satisfaction of the interest of the John Warner estate in said co-partnership property, which report was approved and the settlement confirmed on July 17, 1906, without notice to the complainants. On July 30, 1907, Vespasian Warner filed a report in the county court in which he charged himself with $81,193.60, as the proceeds of the sale to Eleanor M. Magill of the interest of the John Warner estate in the banking business theretofore carried on by John Warner & Co. When the matter of the sale of the interest of the John Warner estate in said banking business and that Vespasian Warner was claiming to be the owner of the bank was first discovered by the complainants, the complainants filed objections to that item in the executor's report, which objections were overruled, and the complainants in this bill prosecuted an appeal to the circuit court of DeWitt county, which appeal is now pending in that court. It further appears that Eleanor M. Magill, at the time of the claimed sale to her of the interest in the co-partnership assets of John Warner & Co., was a woman eighty years of age and knew but little,

if anything, about said sale; that Vespasian Warner, who engineered the sale to her of said co-partnership estate, had been her attorney in fact for fifteen years and was her confidential friend and legal adviser at the time the sale was consummated, and that she executed without question any papers which he presented to her. It is also undisputed that at the time Eleanor M. Magill executed and delivered said checks as surviving partner, she only had $10,000 or $12,000 in the bank subject to her individual check, and that said checks were drawn against and charged against the co-partnership funds of John Warner & Co. then in the bank, and that said pretended sale was only a paper transaction upon the books of said banking firm. The transaction, when stated in plain words, amounts to this: that Vespasian Warner, as executor of the will of John Warner, deceased, sold to himself, as attorney in fact of Eleanor M. Magill, the interest of the John Warner estate in the co-partnership assets of John Warner & Co., and that such assets were paid for with the co-partnership funds of John Warner & Co., and within two days of said sale the nine-twelfths interest in said banking business was in the control of Vespasian Warner, who claimed to be the absolute owner thereof.

The main contention of the appellants is that the circuit court did not have jurisdiction of this cause, as, it is said the complainants had a complete remedy in the county court, and that the order of the county court approving the report of the purchase of the assets of the firm of John Warner & Co. by Eleanor M. Magill is conclusive of the fairness and legality of said sale and that the same cannot be impeached in this proceeding. We do not agree to either of said contentions. Neither Vespasian Warner, John Q. Lewis nor the complainants were parties to the proceedings in the county court when the order approving the sale was entered, and the complainants did not have notice of the sale, or of the order approving the same, until long after

the term at which it was entered had expired. It is too clear for controversy that both Eleanor M. Magill and Vespasian Warner occupied towards the complainants the positions of trustees as to the co-partnership property of John Warner & Co., and, occupying such positions, they could not so manipulate such co-partnership property as to directly or individually acquire title to such property, and if by a pretended sale of such property, first to Eleanor M. Magill and afterwards to a firm of which Eleanor M. Magill and Vespasian Warner were members, Eleanor M. Magill acquired a two-twelfths interest and Vespasian Warner a nine-twelfths interest therein, a court of equity would set aside such sale. Such transaction was a fraud in law, as the law will not permit a trustee to become a purchaser at his own sale, and if a resort to deceit was had to effect the sale, then the sale became fraudulent in fact, and in either case a court of equity will set aside the sale. (*Williams* v. *Walker*, 62 Ill. 517; *Lagger* v. *Mutual Union Loan Ass'n*, 146 id. 283; *Burns* v. *Edwards*, 163 id. 494; *Miller* v. *Rich*, 204 id. 444; *Roberts* v. *Weimer*, 227 id. 138.) The fact that a third party has been used as a means through which to effect the transfer of the title to the trustee will not defeat the right of the *cestui que trust* to have the sale set aside, neither will the fact that the trustee paid all the property was worth enable him to hold the property. (*Roberts* v. *Weimer, supra.*) This branch of equity jurisdiction is too firmly settled to now be shaken, and the fact that an order of the county court was obtained without notice to the complainants will not enable the defendants to hold the assets of John Warner & Co. *Propst* v. *Meadows*, 13 Ill. 157; *Nelson* v. *Rockwell*, 14 id. 375; *Hinrichsen* v. *Van-Winkle*, 27 id. 334; *Elting* v. *First Nat. Bank*, 173 id. 368.

We have examined the record with the care the importance of the case demands and are of the opinion the judgment of the Appellate Court should be affirmed, which accordingly will be done.      *Judgment affirmed.*