THOMAS E. WING, Defendant in Error, *vs.* G. J. LITTLE, Plaintiff in Error.

*Opinion filed February 17, 1915.*

1. FRAUD—*the maxim that fraud vitiates transaction applies to judgments.* The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions; nor is relief against a fraudulent judgment necessarily limited to the parties to the record or persons in privity with them.

2. SAME—*a collusive judgment is open to collateral attack.* Whenever a judgment or a decree is procured by collusion between the parties for the purpose of defrauding a third party, the latter may attack the judgment or decree in a collateral proceeding and show the fact of such collusion, as a collusive judgment is open to attack whenever and wherever it may come in conflict with the rights and interests of third persons.

3. GAMING—*section 133 of the Criminal Code construed.* Section 133 of the Criminal Code, which makes the premises of one who knowingly permits gambling to be carried on there liable for the satisfaction of a judgment in favor of the loser against the winner in the gambling game, is a valid exercise of the police power of the State, and its similarity to section 10 of the Dram-shop act is such that the same general rules of construction should be applied to both acts.

4. SAME—*a judgment for money lost in gambling is conclusive upon owner of premises as to amount of damages.* A judgment recovered by the loser against the winner in a gambling game is conclusive as against the owner of the premises as to the amount of damages sustained although such owner was not a party to the suit and had no notice thereof, provided the owner knowingly permitted gambling to be carried on in the premises.

5. SAME—*the owner of premises may show that judgment for money lost was collusive.* One whose property is sought to be sold to satisfy a judgment in favor of the loser of a gambling game against the winner, in a suit to which such owner was not a party, is entitled to show in defense that the judgment was the result of collusion between the alleged winner and loser.

6. PLEADING—*fact that cross-bill asks for more relief than the pleader is entitled to is not ground for dismissal.* Where a bill is filed to subject the property of the defendant to payment of a judgment against his tenant for money lost in gambling, a cross-bill setting up collusion between the alleged winner and loser is proper,

and the fact that the prayer, in addition to asking that the judg-ment be not enforced against the property, also asks that the judg-ment be set aside and declared void is not ground for dismissing the cross-bill for want of equity, even though a court of equity will not set aside such a judgment but will leave the parties in the position they have placed themselves.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

JOHN G. FRIEDMEYER, and ALBERT SALZENSTEIN, for plaintiff in error.

HARDIN W. MASTERS, and THOMAS D. MASTERS, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

On April 23, 1909, Thomas E. Wing brought an action in assumpsit in the circuit court of Sangamon county against Isaac Adams, in which he sought to recover $3000 alleged to have been lost by Wing and won by Adams at gaming. A summons issued to the sheriff of Sangamon county was returned "not found." An *alias* summons issued to the sheriff of Adams county, returnable to the January term, 1910, was returned "served" on Adams. Adams made no appearance, and judgment was entered against him by default for the full amount claimed in the declaration. The judgment remaining unsatisfied, Wing filed a bill in equity against G. J. Little, as owner of certain premises, for the purpose of subjecting the same to the payment of said judgment under section 133 of the Criminal Code, which provides that buildings or premises which are knowingly permitted to be used or occupied as a common gaming house or as a place for persons to come together to play for money, shall be held liable for and may be sold to pay any judgment that may be recovered under section 132.

The circuit court sustained a demurrer to an amended bill and dismissed the same for want of equity. The Appellate Court for the Third District held that the bill stated a good cause of action and reversed the decree of the circuit court and remanded the cause. (*Wing* v. *Little,* 163 Ill. App. 468.) The cause being re-instated in the circuit court, the defendant, Little, filed a plea of *nul tiel* record, upon which issue was joined, and a special plea setting up that complainant's judgment against Adams for $3000 was procured by fraud and collusion between Adams and Wing for the purpose of subjecting Little's property to the payment of the judgment, and averring that there was an understanding or contract between Wing and Adams that Adams should have a portion of the proceeds of said judgment when the same was collected from Little. The plea further averred that Wing did not lose $3000, or any other sum, to Adams in or upon the premises of Little. On motion of complainant this plea was stricken from the files. Little also filed an answer, in which he admits that he is the owner of the premises described in the bill but denies that he leased or rented the same to Adams or any other person for the purpose of being used as a gaming house; denies that he permitted gaming to be carried on in the said premises, and denies that he knowingly permitted any person or persons to occupy said premises as a common gambling house or for gaming purposes. Little also filed a cross-bill, in which he alleged that the judgment which was sought to be enforced by the original bill was obtained by fraud and collusion between Wing and Adams. In said cross-bill it is alleged that Little did not lease any room or rooms in said premises for gaming or knowingly permit gaming to be conducted therein; that said Wing did not lose in said premises the said sum of $3000, or any other sum for which said premises ought to be made liable. The prayer of the cross-bill was that the judgment for $3000 be set aside and vacated and that Wing be enjoined from

asserting any rights under said judgment against the cross-complainant.   A demurrer to the cross-bill was sustained and Little elected to stand by his bill.   Complainant in the original bill filed a replication to the amended answer and the cause proceeded to a hearing.   An issue of fact was made up and submitted to a jury.   The only question submitted to the jury by the court was, "Did the defendant, G. J. Little, at any time during the month of November, 1908, or subsequently thereto, and prior to the 26th day of February, 1909, knowingly permit the premises described in the amended bill of complaint to be used or occupied as and for a place where games of chance for money or other valuable thing were played?"   This question was answered in the affirmative by the jury.   The court overruled a motion to vacate the verdict of the jury and proceeded to hear the cause in open court, and found the issues on the original bill in favor of the complainant and against the defendant and entered a decree in accordance with the prayer of the bill.   The Appellate Court for the Third District affirmed the decree, and the record has been transferred to this court as a return to a writ of *certiorari*.

Both the trial and Appellate Courts seem to have proceeded on the theory that the judgment at law against Adams was conclusive of every question that might have been raised by plaintiff in error by way of defense if he had been made a party to that proceeding, and the error assigned upon such ruling is the important question to be determined in this court.   It is not pretended that plaintiff in error, Little, was a party to or had any notice of the pendency of the suit in which the judgment was recovered to pay which his property is sought to be sold.   The trial court was of the opinion that the only question which plaintiff in error could raise in the proceeding to subject his property to the payment of the judgment was whether he had knowingly permitted the premises to be used as a gaming house, and in pursuance of this view that question was

submitted to the jury by a special interrogatory, and this opinion apparently led the trial court to strike the amended plea of plaintiff in error from the files and to sustain the demurrer to and dismiss the cross-bill. Both by his plea and cross-bill the plaintiff in error sought an opportunity to show that the judgment upon which the original bill was predicated was the result of a collusive and fraudulent conspiracy between Wing and Adams, but the trial court regarded this as a collateral attack upon the judgment and refused plaintiff in error the right to raise that question in any form, and this ruling was affirmed by the Appellate Court.

Section 132 of the Criminal Code authorizes a suit to recover any money or other valuable thing in excess of $10 lost at gaming, by any appropriate action against the winner. That section also authorizes any third person to prosecute a suit and recover treble the value of the money or goods so lost in case the loser shall not, within six months next after the loss, in good faith and without collusion sue for and recover such loss. Section 133, under which the present suit is brought, is as follows:

"Sec. 133. If any person shall rent or lease to another any building or premises to be used or occupied, in whole or in part, as a common gaming house, or place for persons to come together to play for money or other valuable thing, or bet upon any game or chance, or shall knowingly permit the same to be so used or occupied, such building or premises so used or occupied shall be held liable for, and may be sold to pay any judgment that may be recovered under the preceding section. Proceedings may be had to subject the same to the payment of any such judgment recovered which remains unpaid, or any part thereof, either before or after execution shall issue against the property of the person against whom such judgment shall have been recovered; and when execution shall issue against the property so leased or rented, the officer shall proceed to satisfy

said execution out of the building or premises so leased or occupied as aforesaid: *Provided,* that if such building or premises belong to a minor or other person under guardianship, the guardian or conservator of such person, and his real and personal property, shall be held liable instead of such ward, and his property shall be subject to all the provisions of this section relating to the collection of said judgment."

The above section of the statute makes no provision in regard to the effect that is to be given to a judgment in favor of the loser and against the winner in a proceeding against the property owner to enforce payment of such judgment out of the premises wherein the gambling occurred. This court has held, under section 10 of the Dram-shop act, which makes the premises wherein intoxicating liquors are sold liable, under certain conditions, for the payment of any judgment for damages and costs that may be recovered under section 9 of the act, that the legislature, in the exercise of the police power, may provide that premises leased for the sale of intoxicating liquor, or which the owner knowingly permits to be used for that purpose, may be subjected to the lien of any judgment recovered for an injury sustained in consequence of the occupant selling or giving away intoxicating liquors. In construing that statute this court has held that the owner of premises who knowingly leases the same for the sale of intoxicating liquor, or permits them to be used for such purpose, in view of section 10 of the Dram-shop act must be presumed to have voluntarily subjected his property to the contingent liability that might be established against it under the statute, and that the statute is not unconstitutional upon the ground that it deprives the owner of his property without due process of law. *Wall* v. *Allen,* 244 Ill. 456, and cases there cited.

So far as we are advised, no case under section 133 of the Criminal Code has been presented to this court for

determination. The similarity between section 133 of the Criminal Code and section 10 of the Dram-shop act is such that the same general rules of construction ought to apply to both statutes. Both statutes were passed under the general police power and are designed to mitigate the evils arising from the subjects with which they deal. The substantial difference between the two statutes is, that the Dram-shop act is regulatory while the other statute is prohibitive. No such thing as a licensed gambling house can exist under our statute. One who knowingly leases his premises for or permits to be carried on therein a business which is prohibited by the statute and which under no conditions can be lawfully carried on, ought not to complain if the same rule of construction is applied to him that is applied to one who leases his property for a dram-shop, which may be lawfully carried on. We think it is clear, from the language of section 133 above quoted, that it was the intention of the legislature that a judgment recovered by the loser against the winner for money lost at gambling should be held to be conclusive upon one who knowingly permits his premises to be used for gambling purposes, as to the amount of damages sustained. The language of the statute, "proceedings may be had to subject the same [the premises] to the payment of any such judgment recovered which remains unpaid, or any part thereof," precludes the construction that the premises were to be held liable for whatever amount might be shown upon the hearing to have been lost. The liability created by the statute is for the amount of the judgment, and where a judgment has been obtained in an adversary proceeding and without fraud or collusion, all questions are foreclosed in the proceeding to subject the premises to the payment of such judgment except the question whether the owner of the premises had knowingly permitted them to be used for the unlawful purposes prohibited by the statute. But these salutary provisions of the statute cannot be used by designing persons

for the purpose of accomplishing a fraud. It would be monstrous to hold that two or more persons could fraudulently conspire together to have a judgment entered under this statute for which the property of a third person might be made liable, and deny to the property owner the right to show such fraud and conspiracy in a proceeding instituted for the purpose of subjecting his property to the payment of the fraudulent claim. The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions. Nor is relief against a fraudulent judgment necessarily limited to the parties to the record or their privies. Whenever a judgment or a decree is procured through the fraud of either of the parties or by collusion of both, for the purpose of defrauding some third party, such third party may attack the judgment or decree in a collateral proceeding and show the fraud or collusion by which the judgment or decree was obtained. (*Martin* v. *Judd,* 60 Ill. 78; *Atlas Nat. Bank* v. *More,* 152 id. 528; *Farwell* v. *Great Western Telegraph Co.* 161 id. 522; *Elting* v. *First Nat. Bank,* 173 id. 368.) A collusive judgment is open to attack whenever and wherever it may come in conflict with the rights or interests of third persons, and fraud is not a thing that can stand, even when robed in a judgment. *Freydendall* v. *Baldwin,* 103 Ill. 325.

It follows from the rule above announced that the trial court erred in striking the plaintiff in error's amended plea from the files and in sustaining a demurrer to the cross-bill. The issue sought to be raised by these pleadings was the fraudulent character of Wing's judgment. This question might have been determined, as a matter of defense, under plaintiff in error's amended plea which was stricken. If that plea had been sustained by proof it would have defeated defendant in error's cause of action, but it would have left the judgment in full force as a possible basis for future proceedings against the plaintiff in error. The error

committed in striking the plea from the files might have been cured had the court allowed plaintiff in error's cross-bill to stand. The cross-bill was a proper mode of defense and was germane to the subject matter of the original bill. The prayer of the cross-bill was that the judgment be canceled and declared absolutely void. This prayer was broader than the relief to which the plaintiff in error was entitled. Even if the judgment was fraudulent and collusively obtained, the parties to such judgment should be left in the position, in respect thereto, that they have voluntarily assumed. If Wing and Adams fraudulently conspired together to have a fraudulent judgment entered they are *in pari delicto,* and a court of equity would not relieve either one of them but would leave them in the position in which they had voluntarily placed themselves. It is of no importance to plaintiff in error what becomes of the judgment as between Wing and Adams. All the relief he is entitled to is to be protected from the enforcement of the judgment against his property, but this defect in the prayer of the cross-bill did not warrant the court in sustaining a demurrer to and dismissing the cross-bill for want of equity. Merely because plaintiff in error asked for more relief than he was entitled to is no reason why he should be denied that relief to which he might show himself to be entitled.

Since this case must be reversed for the errors already pointed out and a rehearing will be had upon the issue presented by the cross-bill, we deem it not improper to say that upon a hearing of the issue whether the judgment was the result of fraud or collusion the parties should be given an opportunity to offer any competent evidence of facts or circumstances which tends to prove or disprove the issue. Upon the trial of this issue the judgment will not preclude either party from offering any relevant and competent testimony.

For the errors· indicated, the decree of the circuit court and the judgment of the Appellate Court are reversed, and the cause will be remanded to the circuit court of Sangamon county for further proceedings in accordance with the views herein expressed.          · *Reversed and remanded.*