**GIBBONS v. BRANDT et al.**

No. 9378.

Circuit Court of Appeals, Seventh Circuit.

Nov. 7, 1947.

On Rehearing May 4, 1948.

Further Rehearing Denied Sept. 23, 1948.

SPARKS, Circuit Court, dissenting on rehearing.

David J. Kadyk, C. H. G. Heinfelden, Russell Greenacre, Henry T. Martin, and Bruce E. Brown, all of Chicago, Ill. (Lord, Bissell & Kadyk and Martin, Ullmann & Brown, all of Chicago, Ill., of counsel), for appellants.

John H. Gately, of Chicago, Ill. for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This is an equitable action to enforce against certain of defendants' real estate in Chicago a judgment previously recovered by plaintiff in the Circuit Court of Cook County, Illinois, against Jack Cannaven, 393 Ill. 376, 382, 66 N.E.2d 370. The action against Cannaven was brought under Article VI, section 14, of the Illinois Liquor Control Act, and this action to enforce the lien of that judgment is brought under Article VI, section 15, Ill. R. S. Ch. 43, sections 135 and 136. Previous to and at the time of plaintiff's alleged injury out of which this controversy arose, Cannaven was operating a tavern in appellants' building, located on their real estate in Chicago, which was then held by Cannaven as tenant of appellants, and against which appellee now seeks to enforce her judgment against appellants' building and premises which were so leased and occupied by Cannaven at the time she sustained her injury, on August 10, 1940.

Defendants in their answer admitted some material allegations of this complaint, denied others and pleaded lack of information as to the remaining issues. The second paragraph of answer alleged that since plaintiff's alleged injury, the tavern building in which she sustained it was so substantially damaged by explosion and fire, as to lose its identity as the same building or premises theretofore located; that after such explosion and fire and without defendants' knowledge of plaintiff's alleged injury, or the pendency of her action against Cannaven, these defendants, at their own expense, caused to be erected on the same premises a new building, distinct and different from the old one, and of substantially greater value. By reason of such alleged facts defendants claimed that such new building or premises are not subject to plaintiff's judgment against Cannaven.

Defendants' answer set forth a third defense based upon alleged false testimony given by plaintiff in her action against Cannaven.

This equitable action was filed in the Circuit Court of Cook County on December 23, 1942, and removed to the United States District Court for the Northern District of Illinois, Eastern Division, on June 26, 1943, on the ground of diversity of citizenship. The hearing of evidence in that court began October 1, 1946. The court announced its decision in favor of Gibbons on December 31, 1946, entered its decree accordingly on January 16, 1947, and from that decree this appeal is prosecuted.

Upon the evidence submitted under the second answer appellants contend that the

building and premises in which appellee was injured are no longer existent, because 65 per cent of the old building's value was destroyed by fire since her injury, and appellants have erected another building at the same place, using therein whatever materials were usable from the old building. The theory of this answer is that the Illinois statute here involved in using the word "premises" did not intend to include the real estate upon which the old building was located and on which the rebuilt building is now located.

It is quite true that the word "premises" does not have one fixed and definite meaning. It is to be determined always by its context, and it has been held to mean real estate or buildings, or both. 33 Words and Phrases, Permanent Ed., 345, 354. Its meaning is dependent on the circumstances in which it is used, O'Connor v. Great Lakes Pipe Line Co., 8 Cir., 63 F.2d 523; it may include furniture and fixtures, Annapolis Co. v. Wardman, 59 App.D.C. 321, 41 F.2d 115, land and everything appurtenant thereto, Winlock v. State, 121 Ind. 531, 23 N.E. 514, State v. French, 120 Ind. 229, 22 N.E. 108, 735. See also Boon v. Boon, 348 Ill. 120, 180 N.E. 792; Merchants' Co. v. Chicago Exchange Bldg. Co., 210 Ill. 26, 71 N.E. 22, 102 Am.St.Rep. 145; Holbrook v. Debo, 99 Ill. 372; Rignall v. State, 134 Miss. 169, 98 So. 444. We are convinced, under the statute here involved, that not only the building leased to Cannaven, but the appurtenances thereto, and the real estate on which they were located, were rightfully subject to the lien sought herein, if the judgment was not fraudulently obtained. We are further of opinion that under the circumstances here presented that lien was not abrogated by the fire. In any event that part of the old building which was not destroyed, and the ground upon which the old building stood, are still subject to the lien, and we are not informed as to the value of the old building or the lot, or the cost of the new building.

Appellants complain, inferentially at least, of the inequity of plaintiff in failing to inform them, residents of Florida, of her injury and her judgment against their tenant, and permitting them, without knowledge of her injury, to go to the expense of rebuilding. Under the statute now before us, no burden was upon plaintiff to inform defendants of anything before this action was instituted. By this statute, property rented for tavern purposes is burdened with great risk which, it seems, would suggest to the owners the necessity for frequent inquiry of the lessee as to existing or threatened suits, or judgments against them under this statute, at least before rebuilding. No such evidence appears in this record, and we are convinced that under such circumstances the second paragraph of answer is without merit.

We construe the third defense as an attempt to charge appellee with having given perjured testimony by means of which she secured her verdict against Cannaven, and the District Court adopted the same theory. The Statute of Illinois, Ill.Rev.Stat.1947, c. 38, § 473, defines a perjurer as one who, having taken a lawful oath in any judicial proceeding, swears wilfully, corruptly and falsely in a matter material to the issue. True, the pleader in this answer does not use the word perjury, or any of its derivatives. However, it is not claimed in any part of the answer that there was any collusion on the part of appellee, and we are convinced that unless it is intended to charge her with perjury in this respect the answer is not good as a defense, for testimony may be false and yet not fraudulent, and unless appellee's testimony was fraudulent this answer is of no avail to them.

This answer alleged that appellee there testified that her former wages had been $20 a week, or $80 a month, when in fact she had received only $75 a month, or $18.75 a week; that after her alleged injury "she had not been able to work, and had worked for *maybe* five or six weeks time"; that she also "testified that since said injury she had not worked at all steadily with the exception of *maybe* three or four months"; that she again "testified that she had worked for Sach's Apparel Shop in the summer of 1942 *about* five or six weeks." The answer further alleged that Gibbons' counsel argued, in substance, to the jury that "Gibbons had been able to work, and

had worked, only seven weeks since her alleged injury."

This answer further alleged that after her injury Gibbons worked steadily for her former employer for a period of four and one-half months, and thereafter, but before the trial, worked for at least two other employers (not naming them); and, that upon information and belief, Gibbons, after her alleged injury and before the time of the Cannaven trial, was employed and worked for more than a year's total time.

It was alleged that this testimony of plaintiff was inconsistent and contradictory within itself, and likewise inconsistent with the argument of her counsel; that her testimony and her counsel's argument were misleading to the jury both as to the extent of plaintiff's alleged injury and as to her pecuniary damage, and were so intended by both the plaintiff and her counsel. The prayer is that the judgment should not be enforced against the appellants' premises referred to in the complaint.

 In an action of this character it is a defense that the judgment was recovered by fraud, Wall v. Allen, 244 Ill. 456, 91 N.E. 678, 18 Ann.Cas. 175; Wing v. Little, 267 Ill. 20, 107 N.E. 875; Garrity v. Eiger, 272 Ill. 127, 111 N.E. 735, and it is not necessary that the alleged fraud relied upon should take the form of collusion. Wing v. Little, supra. See also Indiana Harbor Belt R. R. Co. v. Calumet City, 391 Ill. 280, 63 N.E.2d 369. Nor is it necessary that the fraud be directed primarily against the owners of the property. Johnson v. Waters, 111 U.S. 640, 4 S.Ct. 619, 28 L.Ed. 547; Mettler v. Warner, 249 Ill. 341, 94 N.E. 522. The right to attack a judgment collaterally for fraud extends not only to matters affecting the jurisdiction of the trial court, but also to matters submitted to the juridiction of the court. Wing v. Little, supra; Garrity v. Eiger, supra; Indiana Harbor Belt R. R. Co. v. Calumet City, supra.

The District Court made no special findings of fact but it gave a memorandum opinion in which it noted that the transcript of the Cannaven case had been admitted in evidence, and that the defendants had produced certain oral testimony and documentary evidence. The court then made the following statement [75 F.Supp. 43, 45]:

"From the evidence submitted it must be inferred that there was some false swearing on behalf of the plaintiff * * * (at the Cannaven trial), and perhaps should be inferred, that such false swearing constituted perjury." He further stated: "Plaintiff denies that there was any false swearing of consequence but further says that even though there were false swearing or perjury on behalf of the plaintiff that * * * related to the extent of the injuries of the plaintiff and accordingly it related to a matter submitted to the Circuit Court of Cook County for determination and that matter cannot be re-examined here." The court then expressed its opinion: "That the defendants cannot in this suit be permitted to avail themselves of any defense of false swearing or perjury."

It is worthy of note that this memorandum of the District Court is not a part of the decree, nor is it a finding of ultimate facts. However, if it be considered a finding of facts, or a conclusion of law, we are convinced that the language used with respect to the false swearing being perjury is so uncertain in its conclusion that it can not be considered either a finding of fact or a conclusion of law. The broadest interpretation of the court's language in this respect is that perhaps it should be inferred that Gibbons' false swearing constituted perjury. The court thought it made no difference whether it was perjury or merely false testimony. Under the facts here presented we think there was no error. Moreover, we are convinced that the false swearing did not amount to perjury, because it was given neither wilfully nor corruptly, and we submit the following undisputed facts to substantiate this conclusion.

Gibbons' testimony was given two years and almost four months after her injury. She was physically and painfully injured. She had a triple fracture of her jaw, as a result of which she lost several teeth, and was compelled to wear wires on her jaws and teeth to hold them properly. The latter were removed September 23, 1940, and the former were not removed until August 17, 1942, a little more than two years after her injury. She had constant pain at night and was unable to sleep, and for loss of sleep and rest at night she was unable to

work regularly, although she did work at times.

The alleged perjury relates only to the amount of her salary and to the time she worked after her injury until she gave her testimony, and it is not denied in this respect that her statements are somewhat conflicting with each other, and they also conflict with the books of account of one of her employers, The General Finance Corporation, which disclosed that she received from that employer $75 per month and began working for it on July 17, 1939, a little more than a year prior to the injury here involved; that after her injury, on August 10, 1940, she worked one day for this employer in September, and on October 7, 1940, she was again rehired, and worked nine days in that month, and until March 1, 1941, when she was finally released.

On direct examination, she testified that prior to her injury she had worked for that employer about one year and eight months for a salary of $20 per week. On cross-examination she stated that she had worked for this company for one year and eight months at a salary of $20 a week. She again stated that she received $20 a week from this employer, and in answer to the question: "You worked there for one year and eight months?" She answered: "Approximately." At the time of the accident she had only worked for this employer one year and twenty-three days. However, covering the entire time from her first employment there up to the time she was finally released on March 1, 1941, the total time would be one year, seven months and fourteen days, which is very close to her approximation. True, this period would cover the time of her injury and her inability to work, which of course was not correct, but she was an employee of this employer, off and on, until the first day of March, 1941, when she was finally released. Afterward, and before the trial, she received from other employers $20 a week. Under these circumstances we cannot say, and the jury did not say, that she was guilty of perjury.

So far as the record in the State Circuit Court is concerned, there seems to be no direct question raised about perjury except in the instructions of the court. There we find the following instruction given by the court at her request:

"If you believe from the evidence that any witness in this case has knowingly and wilfully sworn falsely on this trial to any matter material to the issues in this case, then you are at liberty to disregard the entire testimony of such witness, except insofar as it has been corroborated by other and credible evidence or by facts and circumstances proved on the trial."

From the transcribed record of the Circuit Court trial, it is not definitely certain that this instruction was given. We think it was, for it is incorporated in the instructions that were given and it was requested by the plaintiff, no objections were made to it, and the record does not show that it was refused. This circumstance strongly indicates that the false testimony of this plaintiff relating to the length of time she was able to work, and did work, was not perjurious in its nature.

Her testimony with respect to her wages, which actually amounted to $75 per month, from this employer, was false. It may be said however, she has worked since her injury for other employers who paid her $20 a week, and the fact of the length of time that elapsed from the time of this injury, or from her final release by The General Finance Corporation, until the date of the trial in the Circuit Court might easily explain all of her false testimony with which she is charged.

Moreover, there is no way of telling the specific items which the jury thought she was entitled to receive. In her complaint she demanded damages of $30,000. Her verdict was for $12,000, and the Illinois Statute provided that exemplary damages may be awarded.

Under these circumstances we think the decree of the District Court should be

Affirmed.

## On Rehearing

LINDLEY, District Judge.

We have granted a rehearing and the cause has been reargued.

In our earlier opinion we disposed of the issues raised by the various defenses of-

fered by defendants at the trial. We see no occasion to recede from anything said with respect to any other than the third defense which has to do with the question of whether the fraud of plaintiff in procuring judgment may be invoked by the owner when the judgment creditor attempts to enforce its lien against the owner's property. We must keep in mind that the defendants, owners of the property involved, have never had a day in court. The Supreme Court of Illinois in Gibbons v. Cannaven, 393 Ill. 376, 66 N.E.2d 370, 169 A.L.R. 1190, held that they were not entitled to be heard in the original action or upon appeal. Consequently the first time that defendants had opportunity to question the validity of this judgment was when plaintiff sought, in the present action, to enforce the judgment against their property in pursuance of the pertinent Illinois statutes cited in our original opinion. Then and then only were defendants' rights before any court for determination.

We said and we repeat that, under the Illinois authorities, in an action of this character, it is a defense that the judgment was procured by fraud; that it is not necessary that the alleged fraud relied upon should take the form of collusion or that it be directed primarily against the owners of the property. We held that this right of one not a party to a suit to attack the judgment entered therein for fraud extends not only to matters affecting the jurisdiction of the trial court, but also to matters submitted to the jurisdiction of the court. The Illinois cases cited are clear and unequivocal in their pronouncement of these ruling principles. Thus, in Wing v. Little, 267 Ill. 20, 107 N.E. 875, involving the rights of the owner to set up the fraud utilized in the procurement of the judgment, the court expressly said that whenever a judgment or decree is procured through fraud of either of the parties for the purpose of defrauding some third party, such third party may attack the judgment or decree in a collateral proceeding and show the fraud or collusion by which the judgment or decree was obtained. We find no exception to this ruling principle in Illinois.

■ The trial court expressly found that plaintiff testified falsely as to the extent to which she was prevented from working and earning money; that she caused her counsel substantially to misrepresent and overstate the extent to which she had been prevented by injuries from working and earning money and that, by means of such false testimony and argument, plaintiff misrepresented to the court and the jury that her injury was substantially greater than it really was. Thus the fact of the fraud has been expressly judicially found and determined and the evidence clearly substantiates the finding. Plaintiff's sworn testimony that her injury was such that she was unable to work for two years after it occurred, whereas it is undisputed that she resumed her employment within less than two months, was gross misrepresentation which could have resulted only in deception of the jury in its determination of plaintiff's damages. The Illinois courts have said emphatically that when sitting in equity they will not put their stamp of approval upon such conduct or deny to a third party injured thereby, the right to present to the court the true facts.

■ But the trial court concluded that defendants could not avail themselves of the defense. The district judge seemed to believe that it was necessary to prove that Cannaven colluded with Gibbons. However, we have seen from the authorities originally cited, it is not necessary that the fraud relied upon should take the form of collusion; it may emanate from the misrepresentation of either party. On the record, therefore, it appears that, though the district court found that the judgment had been procured by material and substantial misrepresentation of fact, it held the defense not open to defendants. This seems to us in direct conflict with the governing Illinois authorities, by which we are bound, all of which agree that if a third party is injured by procurement of a fraudulent judgment, he has a right to set up that defense when he is brought into a forum which has jurisdiction to determine the rights and liabilities of the parties. Indeed, were this opportunity not presented, defendants' property will have

been taken in pursuance of the lien of a fraudulent judgment without defendants ever having had the right to be heard in the original trial or on appeal therefrom or in the action in which it is sought to impress the judgment lien upon their property. This is abhorrent to a court of equity and violates elemental principles. It is clear, therefore, that the trial court erred in refusing to permit defendants to avail themselves of the third defense, that of fraud in procurement of the verdict. For this reason the judgment must be reversed with directions that the trial court give effect to the undeniable fraud of plaintiff.

Nor do we believe that defendants were bound to show that plaintiff was guilty of the crime of perjury. The Supreme Court of Illinois has said that a fraudulent representation "is anything short of a warranty, 'proceeding from the action or conduct of the party charged, which is sufficient to create upon the mind a distinct impression of fact, conducive of action. The most usual and obvious example is an oral, written, or printed statement. * * * Any conduct capable of being turned into a statement of fact is a representation. * * * It is sufficient that there were acts such as to mislead a reasonably cautious or prudent man in regard to the existence of a fact forming a basis of or contributing an inducement to some change of position by him.'" Leonard v. Springer, 197 Ill. 532, 64 N.E. 299, 301. "Fraud includes anything calculated to deceive, whether it be a single act or combination of circumstances, whether the suppression of truth or the suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or by silence, by word of mouth, or by look or gesture." The People v. Gilmore, 345 Ill. 28, at page 46, 177 N.E. 710, at page 717. "Fraud in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another. * * * It may consist in * * * the positive assertion of a falsehood, or in the creation of a false impression by words or acts, or by any trick or device, or in a concealment or suppression of the truth, or in both a suggestion of falsehood and a suppression of truth together." Bundesen v. Lewis, 291 Ill.App. 83, 9 N.E. 2d 327, 333. We find no authority requiring that the representation must have been of such character as to amount to perjury. A single word, even a nod or a wink or a shake of the head or a smile or gesture intended to induce another to believe in the existence of a nonexisting fact may be fraud. Walters v. Morgan, 3 De G. F. & J. 718, 64 Eng.Ch. 718, 45 Eng. Reprint 1056; Turner v. Harvey, 1 Jac. 169; 4 Eng.Ch. 169, 37 Eng. Reprint 814; Wicker v. Worthy, 51 N.C. 500; 26 C.J. 1071; 37 C.J.S., Fraud, § 15. Since there is no difference in the natural effect on the mind of one deceived, whether the deceiver uses words, writings, or symbols, it follows that there is no difference in the legal consequence and the deceiver is liable no matter what means he employs. Morley v. Harrah, 167 Mo. 74, 66 S.W. 942. In other words, if deception is accomplished, the form of the deceit is immaterial. The impelling question is "did it produce upon the mind a false impression conducive to action?"

The judgment is reversed with directions to proceed in accord with the views here expressed.

SPARKS, Circuit Judge, dissents.